**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>Jack Cooper Transport Company, LLC *et al.*[1]<br><br>Debtors. | Chapter 7<br><br>Case No.  25-10416 (BLS)<br>(Jointly Administered)<br><br>**Hearing Date:  May 28, 2025 at 9:00 a.m. ET<br>(requested)**<br><br>**Objection Deadline: May 23, 2025 at 4:00 p.m. ET<br>(requested)** |

**TRUSTEE'S MOTION FOR AUTHORITY TO SELL ASSETS
PURSUANT TO ASSET DISPOSITION PLAN**

Alfred T. Giuliano, as chapter 7 trustee (the "Trustee") for the estates (the "Estates") of the above-captioned debtors (the "Debtors"), moves (this "Motion") for entry of an order: (A) approving the Asset Disposition Plan described in this Motion (the "Asset Disposition Plan"); (B) authorizing him to sell assets of the Estates free and clear of all liens, claims, encumbrances, and other interests pursuant to the Asset Disposition Plan and in a manner consistent with the Engagement Agreement (as defined below); and (C) providing related relief.  In support of this Motion, the Trustee respectfully states:

---

[1] The Debtors in these chapter 7 cases and their case numbers are:  JC TopCo., Inc.; 25-10402 (BLS); Auto & Boat Relocation Services Company, LLC; 25-10403 (BLS); Auto Handling, LLC; 25-10404 (BLS); Jack Cooper CT Services, LLC; 25-10405 (BLS); Jack Cooper Diversified II, LLC; 25-10406 (BLS); Jack Cooper Equipment Leasing, LLC; 25-10407 (BLS); Jack Cooper Holdings, LLC; 25-10408 (BLS); Jack Cooper Investments, Inc.; 25-10409 (BLS); Jack Cooper Logistics II, LLC; 25-10410 (BLS); Jack Cooper Rail & Intermodal, LLC; 25-10411 (BLS); Jack Cooper Rail and Shuttle, LLC; 25-10412 (BLS); JC Intermediate Holdings, Inc.; 25-10413 (BLS); JC Parent Corporation; 25-10414 (BLS); North American Auto Transportation, LLC; 25-10415 (BLS); Jack Cooper Transport Company, LLC; 25-10416 (BLS).

**Background**

**A.      Introduction**

1.      On March 8, 2025 (the "Petition Date"), the Debtors filed the above-captioned bankruptcy cases (the "Bankruptcy Cases") under chapter 7 of the Bankruptcy Code, and the Trustee was appointed shortly thereafter.  The meeting of creditors pursuant to section 341 of the Bankruptcy Code took place on April 3, 2025, and the Trustee is now serving as the permanent chapter 7 trustee pursuant to section 702(d) of the Bankruptcy Code.

2.      Prior to the Petition Date, the Debtors were one of the largest privately owned auto-transport and specialized vehicle logistics providers in the country.  They operated throughout the United States, Mexico, and Canada, and had numerous terminal locations throughout the Midwest, Pacific Northwest, Canada, and Mexico.  The Debtors had ceased all operations as of the Petition Date, and the Trustee is not operating the business.

3.      Shortly after his appointment, the Trustee entered into a sharing agreement (the "Sharing Agreement") with Cerberus Business Finance Agency, LLC, as agent for the Debtors' secured lenders ("Cerberus"), who holds a first priority security interest in substantially all of the Debtors' assets.  Among other things, the Sharing Agreement provides that the Estates shall retain a carve-out in the amount of ten percent (10%) of the net proceeds from the sale of the secured lenders' collateral, for distribution by the Trustee in accordance with 11 U.S.C. §726.  The Trustee's motion for approval of the Sharing Agreement is pending at D.I. 93.

4.      The Trustee is presently preparing to market and sell the Debtors' interest in personal property.  The potentially saleable property of the Estates, as defined in 11 U.S.C. §541 and/or listed in the Debtors' schedules, includes a large number of trucks, trailers, and other vehicles, as well as associated equipment and other property (together, the "Assets").  The Assets

LEGAL\77301156\7 6009698/00635653

are spread out over approximately sixteen of the Debtors' former locations throughout the United States and Canada.  In order to manage these sales, the Trustee determined that he needs the assistance of an experienced auctioneer and sales agent, and decided to retain Ritchie Bros. Auctioneers (America) Inc. ("Ritchie Brothers") in this role.  By a separately-filed *Application to Retain and Compensate Ritchie Bros. Auctioneers (America) Inc. as Auctioneer and Sales Agent* [D.I. 89] (the "Retention Application"), the Trustee has sought authority to retain and compensate Ritchie Brothers pursuant to a certain *Multi-Channel Sales Agreement*, a copy of which is attached to this Motion as Exhibit "A" (the "Engagement Agreement").[2]

5.      As described in the Retention Application, Ritchie Brothers has unparallelled expertise in auctioning and selling rolling stock assets, particularly trucks and trailers.  Ritchie Brothers' recent experience includes serving as the debtors' auctioneer and co-sales agent in the Yellow Corporation bankruptcy cases pending in this Court (No. 23-11069), in which Ritchie Brothers executed a disposition strategy including private sales and auctions for approximately 60,000 units of trucks, trailers, and miscellaneous equipment located across the United States and Canada at over 200 terminal locations.

6.      One of the Trustee's concerns in these Bankruptcy Cases is that due to the sheer quantity of the Assets, their values may be artificially depressed if the market were to be flooded all at once by a large number of vehicles, and a large quantity of related equipment.  A countervailing concern, however, is the need for quickly removing assets from the Debtors' leased terminals in order to limit administrative expenses of the Estates.

7.      Using its industry-leading expertise, Ritchie Brothers has assisted the Trustee in developing the Asset Disposition Plan, which balances these competing concerns by providing for

---

[2] To the extent of any inconsistency between this Motion and the Engagement Agreement, the terms of the Engagement Agreement shall govern.

a hybrid sales approach, whereby the Assets are sold in distinct stages, in carefully-curated lots, and through multiple sales channels.  As described in detail below, the Asset Disposition Plan consists of three overall phases.  First, Ritchie Brothers will explore potential large bulk sales of substantial portions of the Assets, referred to as "Strategic Negotiated Sales."  Second, following any such sales, Ritchie Brothers will offer multiple strategically-assembled smaller packages of the remaining Assets for sale, at fixed minimum prices, on its "Marketplace-E" platform, which is a virtual storefront on Ritchie Brothers' website.  These sales, referred to as "Controlled Go-to-Market Sales," will likely run throughout the remainder of the sale process.  Third, and finally, Ritchie Brothers will conduct a series of unreserved public auctions for the remaining Assets.

8.      The Trustee and Ritchie Brothers believe that the Asset Disposition Plan will thus ensure that the Assets are marketed and sold in an efficient and orderly fashion, and that the Estates will realize maximum possible value.

 B.      **The Asset Disposition Plan**

9.      The Trustee, in consultation with Ritchie Brothers, has devised the Asset Disposition Plan, as set out below, to govern a competitive online public bidding and sale process for the Assets.  The Asset Disposition Plan was designed to obtain the best value possible for the Assets while taking into account the associated costs of maintaining the Assets, including real estate lease obligations and storage and transportation costs.  The Asset Disposition Plan is as set forth below in paragraphs 10 through 19.

10.      Inventory and Relocation Process.  As soon as practicable, Ritchie Brothers will deploy teams to each of the sites where the Assets are believed to be located and undertake an inventory to identify, evaluate, photograph and catalogue each Asset.  Ritchie Brothers will then transport the Assets to its own storage facilities, or to facilities leased by Ritchie Brothers pending

LEGAL\77301156\7 6009698/00635653

completion of the Asset Disposition Plan (the "Relocation Process").  Following the inventory process, the Trustee, in consultation with Cerberus, may abandon any Asset of *de minimis* value in his discretion pursuant to Federal Rule of Bankruptcy Procedure 6007, taking into consideration (among other things) the condition and value of the Asset, the outstanding lease obligations (if any) at the relevant site, the cost of transportation relative to asset value, and the likelihood that the sale of the Asset will not result in meaningful realizable value to the Estates.

11.     Strategic Negotiated Sales.  Ritchie Brothers maintains a database of known potential purchasers of rolling stock and other logistics, trucking and transportation-related assets. Immediately upon entry of the Sale Order, Ritchie Brothers will employ a targeted marketing approach to identify buyers willing and able to purchase assets in an expedited manner. It is important for these buyers to possess the financial and operational wherewithal to transact and remove assets from the Debtors' terminals quickly.  Upon entry of the order approving this Motion (and Ritchie Brothers' Retention Application) Ritchie Brothers will begin to solicit strategic bids from potential purchasers for one or more private bulk sales of all, or large portions, of the Assets (each, a "Strategic Negotiated Sale," and collectively the "Strategic Negotiated Sales").  The Strategic Negotiated Sales will seek to receive premium pricing  while minimizing transportation and storage costs associated with the Relocation Process.  For each potential Strategic Negotiated Sale, Ritchie Brothers will notify the Trustee, who will evaluate and approve or decline such sale, in consultation with Cerberus, within seven (7) days of the Trustee's receipt of such notice.

12.     Controlled Go-to-Market Sales.  Simultaneously with initiating the process for the Strategic Negotiated Sales, Ritchie Brothers will launch a page on its website (the "Jack Cooper Landing Page") to drive internet traffic and enhance visibility of Jack Cooper Assets, all with the goal of maximize sales volume and pricing.  Further, Ritchie Brothers, based upon its experience

5

and market knowledge (in consultation with the Trustee), will list certain Assets on its price controlled online virtual store front called "Marketplace E."  Sales occurring *via* Strategic Negotiated Sales and/or the Marketplace E are referred to as "Direct Sales."  Through both the Jack Cooper Landing Page and Marketplace E, potential buyers will have the ability to view items available for sale and make purchases online.   Assets that are for sale will be available on the Ritchie Brothers' website twenty-four hours per day and seven days per week.  This process allows for the Assets to be sold in a controlled and efficient manner to maximize value.

13.     Prior to listing the Assets for sale, Ritchie Brothers will provide the Trustee and Cerberus with a proposed list of Assets and related pricing to include on Marketplace E.  The Trustee will evaluate and approve the proposed listing, in consultation with Cerberus, within seven (7) days of receiving the proposed listing of Assets for inclusion on Marketplace E.

14.     Direct Sale Marketing.  To promote the Direct Sales, Ritchie Brothers will deploy the following targeted marketing strategies:

   a.   Dedicated landing page for Jack Cooper, using the most relevant and searched keywords on the internet to drive traffic to the page.

   b.   Email campaign to Ritchie Brothers' collective database of over 2 million customers, targeted to the transportation industry.

   c.   Cross-promotion on multiple Ritchie Brothers-affiliated websites, including NationsCapitalInc.com IronPlanet, GovPlanet, and Ritchie list (in 2024, Ritchie Brothers' websites had more than 158 million visits).

   d.   Paid banner ads across a variety of advertising networks and digital publications.

   e.   Dedicated free and paid-social campaigns targeting specific audiences on Facebook, Instagram, X (Twitter), YouTube, and LinkedIn.

   f.   Geo-targeted and interest-targeted social media video campaigns.

   g.   A blog, on Ritchie Hub, highlighting the campaign.

LEGAL\77301156\7 6009698/00635653

15.    Auctions.   As soon as reasonably practical, Ritchie Brothers will commence auctions (the "Auctions," and together with the Direct Sales, the "Sales," and each a "Sale"). Assets sold via Auctions will be sold on an unreserved basis. Once an asset is committed to an Auction, it will sell to the highest bidder on auction day. Ritchie Brothers will use its deep experience and knowledge in planning specific auctions and consider variables such as quantity, category, physical region, current/future market dynamics, comparable sales data, and others. The Assets will typically be included in existing/planned Ritchie Bros. auctions, meaning they will be strategically commingled with other third-party owners' equipment. Nevertheless, the Assets will be a featured highlight in these auctions.  Ritchie Brothers will take a multi-layered approach to generating buyer demand for the Assets, using real-time market data to drive its efforts including website merchandising, email marketing, integrated digital advertising, as well as social and traditional media.

16.    Ritchie Brothers will conduct the Auctions from its facilities in multiple geographic locations, and across multiple dates, in a manner calculated to maximize the exposure of the Assets to key demographic groups of potential buyers, and to generate the maximum amount of interest in the Assets.  Ritchie Brothers's hosts as many as 35 auctions per quarter depending on their size and location, with each facility having its own regular auction cadence.  Volumes at each auction facility will naturally follow the composition of the inventory that needs to be removed from the Debtors' facilities, and will be dependent upon the quantities of Assets sold via Direct Sales.

17.    Auction Marketing.  To specifically promote the Assets, Ritchie Brothers will deploy the following tactics during this phase:

a.  Target over a million truck owner contacts on Ritchie Brothers' proprietary lists with a digital campaign.

b.  Ensure prominent placement in Google results by targeting relevant equipment categories, brands, and model keywords.

7

c.   Target new users with purchasing intent and returning users who have viewed similar items on Ritchie Brothers' website, with banner ads across a variety of advertising networks.

d.   Target new and returning users interested in specific categories, equipment brands, and interests in transportation using video advertising on YouTube, Facebook and more, including Connected TV

e.   Target Ritchie Brothers' 2 million+ followers of its social media platforms who engage with its daily content on Facebook, Instagram, TikTok, LinkedIn, YouTube and X (Twitter).

18.   <u>Closing and Titling</u>.  Pursuant to the Engagement Agreement, the Trustee shall appoint Ritchie Brothers as his attorney-in-fact with a limited power of attorney to execute, on the Trustee's behalf, all documents necessary to transfer title to, and permit registration of ownership of, the Assets sold pursuant to the Asset Disposition Plan (the "<u>Sold Assets</u>") to the purchasers (the "<u>Purchase Instruments</u>").[3]  Pursuant to the Engagement Agreement, at the conclusion of each Sale, Ritchie Brothers shall:

a.   Perform all closing and titling services necessary to transfer title to the Sold Asset to the buyer, including delivery of a Purchase Instrument;

b.   Collect payment from the buyer and deliver the amount to the Trustee, net of the Ritchie Brothers Fees (as defined in the Retention Application), within twenty-one (21) days thereafter;[4] and

c.   Coordinate delivery and or pick-up of the Sold Asset with the buyer.

19.   In addition, beginning on June 15, 2025, Ritchie Brothers shall prepare and deliver to the Trustee and Cerberus on the fifteen (15th) of each month an itemized statement describing all Sales conducted over the previous one-month period (the "<u>Rule 6004(f) Statement</u>").  The Rule 6004(f) Statement shall identify, to the extent practicable, the Asset or lot sold and the price

---

[3] No valid and perfected lien of Cerberus in any Asset or Equipment (as defined in the Engagement Agreement) or other collateral subject to a certificate of title shall be invalid or unperfected as a result of the transfer of the possession of such original certificates of title to Ritchie Brothers to facilitate the sale of the Assets or Equipment or such other collateral pursuant to the terms of the Engagement Agreement.

[4] The Trustee in accordance with the Sharing Agreement shall turn over sale proceeds to Cerberus.

LEGAL\77301156\7 6009698/00635653

received for such Asset or lot.  The Trustee shall thereafter file the Rule 6004(f) Statement with the Court.

C.    **Notice Procedures**

20.    The Trustee proposes the following notice procedures (the "Notice Procedures") in connection with the Sales:

a.    **Notice**.  Service of this Motion, together with the form of "Notice of Trustee's Motion for Authority to Sell Assets Pursuant to Asset Disposition Plan" attached hereto as Exhibit "B" (the "Notice," and together with this Motion, the "Motion and Notice") shall constitute notice of the Trustee's proposed sale of the Assets via the Asset Disposition Plan.  The Trustee shall serve the Motion and Notice on the following parties by 1st class United States mail and/or electronic mail (if the Trustee knows an applicable email address) on: (i) the Office of the United States Trustee; (ii) counsel to the Debtors; (iii) the parties appearing as secured creditors on Schedule D of the Debtors' Schedules of Assets and Liabilities filed with the Court; (iv) the Debtors' top thirty (30) largest unsecured creditors as appearing in the Debtors' Schedules of Assets and Liabilities filed with the Court (v) the Internal Revenue Service, (vi) all applicable federal, state, and local taxing and regulatory authorities known by the Trustee to have liens on all or part of the Assets; (vii) the counterparties to the Debtors' real property and vehicle leases appearing on Schedule G of the Debtor's Schedules of Assets and Liabilities filed with the Court; (viii) the United States Department of Justice and applicable state attorneys general; (ix) all parties who have requested notice pursuant to Bankruptcy Rule 2002; and (x) any other parties known by the Trustee to have expressed an interest in a transaction with respect to all or part of the Assets (collectively, the "Notice Parties").

**Objections**.  Any party wishing to object to this Motion must set forth its objection in writing, specify with particularity the grounds for its objection, and file its objection with the Court and serve it on the following parties by [TBD], 2025 (the "Objection Deadline"): (i) the Trustee, care of his counsel, Cozen O'Connor, 1201 N. Market St., Ste. 1001, Wilmington, DE 19801, Attn. John T. Carroll, III, Esq. (jcarroll@cozen.com), Simon Fraser, Esq. (sfraser@cozen.com), and David R. Doyle, Esq. (DavidDoyle@cozen.com); (ii) Cerberus Business Finance Agency, LLC, care of its counsel, KTBS Law LLP, 1801 Century Park East, 26th Floor, Los Angeles, CA 90067, Attn. David A. Fidler, Esq. (DFidler@KTBSLAW.com); (iii) Ritchie Brothers, care of its counsel Dentons, US LLP, 1900 K Street, NW 20006, Attn. Sam J. Alberts; and (iv) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19081, Attn: Benjamin Hackman, Esq. (benjamin.a.hackman@usdoj.gov) (together, the "Service Parties").  The Trustee requests that the Court order that the failure to file and serve objections by the Objection Deadline and in accordance with the foregoing procedure shall be deemed a waiver of such objections and the objecting party shall be forever barred

LEGAL\77301156\7 6009698/00635653

from asserting such objections with respect to the consummation and closing of the Sales of the Assets.

**Summary of Relief Requested**

21.      The Trustee is seeking on an expedited basis entry of an order: (i) approving the Asset Disposition Plan and the Notice Procedures; (ii) authorizing the Trustee to sell the Assets pursuant to the Asset Disposition Plan pursuant to sections 363(b), (f), and (m), and 105, of the Bankruptcy Code without further order of the Court; and (iii) granting related relief.

**Basis for Relief Requested**

**A.      The Asset Disposition Plan and Notice Procedures should be approved**

22.      The Asset Disposition Plan is designed to maximize the value received for the Assets by facilitating a competitive sale and auction process in which all potential bidders are encouraged to participate and submit competing bids.  The Asset Disposition Plan is designed for maximum efficiency in order to achieve the most favorable results possible for the Estates.

23.      The Trustee believes that the Asset Disposition Plan and Notice Procedures strike an appropriate balance between efficiency on the one hand, and the need to provide potential bidders and parties-in-interest in the Bankruptcy Cases with sufficient notice of the Motion and Asset Disposition Plan, on the other hand.  Similarly, Potential Bidders will have sufficient time to acquire the information necessary for the submission of timely and informed Bids.  Ritchie Brothers will begin advertising the Assets to be sold promptly following the approval of its retention, and, in consultation with the Trustee, Ritchie Brothers believes that it will have sufficient time to conduct fulsome advertising in accordance with its ordinary practices.

24.      The Trustee believes that the Notice (when served together with the Motion) will provided sufficient information about the hearing on this Motion (and, in combination with Ritchie Brothers' marketing, about the Assets and sale process) to the Estates' major creditor

10

constituencies, to parties potentially interested in bidding on the Assets, and to parties whose interests may be impacted by the Asset Disposition Plan. Additionally, a website created by Ritchie Brothers dedicated to the Asset Disposition Plan will feature a link to Ritchie Brothers' "Marketplace-E" online storefront, and will contain information about the Assets and the Asset Disposition Plan, including information on how to bid on, or make an offer to purchase, the Assets.

25.    The Asset Disposition Plan is designed for maximum flexibility in all respects. The Trustee, in consultation with Ritchie Brothers and Cerberus, will have built-in discretion to make adjustments throughout the process to ensure that the Estates receive maximum value for the Assets.

26.    Finally, the Trustee notes that Ritchie Brothers has considerable experience in selling vehicles, rolling stock, and related assets. For example, Ritchie Brothers recently successfully completed a lengthy multi-channel sale process of rolling stock and related assets in the Yellow Corporation bankruptcy cases in this Court. The assets in those cases were similar to the Assets here, and Ritchie Brothers' sales process in the Yellow cases was similar to the proposed Asset Disposition Plan in these Bankruptcy Cases. Accordingly, the Asset Disposition Plan is well battle-tested. The Trustee believes that Ritchie Brothers' experience in Yellow will be invaluable in the instant cases.

27.    Accordingly, the Trustee respectfully submits that the Asset Disposition Plan and the Notice Procedures should be approved.

**B.    The Sales of the Assets pursuant to the Asset Disposition Plan should be approved under 11 U.S.C. §363(b)**

28.    Section 363(b)(1) of the Bankruptcy Code provides, "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." A court should approve a trustee's sale or use of assets outside the ordinary course of

business if the trustee demonstrates a sound business justification for the proposed transaction. See, e.g., In re Martin, 91 F.3d 389, 395 (3d Cir. 1996); In re Abbott's Dairies of Pa., Inc., 788 F.2d 143 (3d Cir. 1986). Once the trustee articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" In re S.N.A. Nut Co., 186 B.R. 98, 102 (Bankr. N.D. Ill. 1995); In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992); In re Johns-Manville Corp., 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("A presumption of reasonableness attaches to a Debtor's management decisions").

29.    The Trustee has sound business justifications for selling the Assets at this time. The Debtors are not operating, and the Trustee has no use for any of the Assets. At the same time, the Assets are incurring storage costs, and possibly other costs, and may be depreciating in value. Consequently, the Trustee's selling the Assets would both generate cash for the Estates and, at the same time, stem the incurrence of such liabilities. In addition to the accrual of costs, the Trustee is concerned that the longer the Assets remain unsold, the more difficult it may become to attract buyers. Consequently, the Trustee wishes to complete the sale process as expeditiously as possible.

30.    The Trustee proposes to implement a competitive multi-channel sales and auction process via the Asset Disposition Plan, which will enhance his ability to receive maximum value. Consequently, the fairness and reasonableness of the consideration to be received by the Trustee will ultimately be demonstrated by a "market check" via the rigorous processes of the Asset Disposition Plan, which the Trustee believes is the best means for realizing maximum possible value for the Assets.

12

31.     The Trustee submits that under the circumstances of these cases, his transfer of title to the Sold Assets to the applicable Purchasers need not be the subject of any additional Court approval following the entry of an order granting this Motion and the implementation of the Asset Disposition Plan.  The Assets include very large quantities of vehicles and equipment.  The Assets are likely to sell in numerous separate lots, and to numerous different Purchasers.  The Trustee expects that many of the lots will be relatively small, and many of the Purchasers will be small businesses or individuals purchasing either individual assets or small lots.  In addition, the ongoing storage of the Assets is costly, and the Estates will realize considerable cost savings if Ritchie Brothers is able to arrange for the Sold Assets' removal immediately after each purchase occurs.  Under these circumstances, the Trustee believes that a "one-step" sale procedure is appropriate and in the best interests of the Estates.

32.     As noted above, Ritchie Brothers will file one or more reports pursuant to Bankruptcy Rule 6004(f), which will inform the Court and parties in interest of the particular Assets sold, the prices obtained, and the identities of the Purchasers.

## C.     The Sales should be free and clear of Interests pursuant to 11 U.S.C. § 363(f)

33.     Section 363(f) of the Bankruptcy Code permits a trustee to sell assets free and clear of all liens, claims, encumbrances, and other interests (collectively, "Interests"), with any such Interests attaching to the net proceeds of the sale with the same rights and priorities therein as in the sold assets.

34.     Under section 363(f), a Trustee may sell all or any part of the debtor's property free and clear of Interests in the property if: (1) such a sale is permitted under applicable non-bankruptcy law; (2) the party asserting such a lien, claim, or interest consents to such sale; (3) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all

liens on the property; (4) the interest is the subject of a bona fide dispute; or (5) the party asserting the lien, claim, or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest.

35.     As section 363(f) is written in the disjunctive, a trustee need only meet one of the five conditions of section 363(f).  If any parties holding any alleged Interests in the Assets were to file an objection to this Motion related to section 363(f), the Trustee would be able to demonstrate at the hearing that he can satisfy one or more of these conditions with respect to the objecting party.  At a minimum, the Trustee expects that he will satisfy the second and fifth of these requirements, if not others as well.  See, e.g., In re TE Holdcorp LLC, No. 22-1807, 2023 WL 418059, at *3 (3d Cir. Jan. 26, 2023) ("We agree with the Seventh Circuit that 'lack of objection (provided of course there is notice) counts as consent' under 11 U.S.C. § 363.") (quoting FutureSource LLC v. Reuters Ltd., 312 F.3d 281, 285 (7th Cir. 2002)).

**D.     The Purchasers should be entitled to the protections of 11 U.S.C. §363(m)**

36.     Pursuant to section 363(m) of the Bankruptcy Code, a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims.  See In re Mark Bell Furniture Warehouse, Inc., 992 F.2d 7, 9 (1st Cir. 1993); In re Willemain v. Kivitz, 764 F.2d 1019, 1023 (4th Cir. 1985); In re Congoleum Corp., No. 03-51524, 2007 WL 1428477, at *2 (Bankr. D.N.J. May 11, 2007).

37.     The Trustee requests that the Court include in any order granting this Motion a finding that each Purchaser is entitled to the protections of section 363(m) of the Bankruptcy Code (except for any Purchasers who are insiders of affiliates of the Debtors).  The Trustee submits that this relief is appropriate where the selection of the Purchasers has resulted from a competitive public bidding process and arm's length, good faith negotiations.

38.     Accordingly, the Trustee requests that the Court approve the application of section 363(m) to all Purchasers other than insiders or affiliates of the Debtors.  The Trustee believes that providing Purchasers with this protection will ensure that the Estates will receive the maximum possible price for the Assets.

**E.     Waiver of the Stay of Federal Rule of Bankruptcy Procedure 6004(h)**

39.     Federal Rule of Bankruptcy Procedure 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."  The Trustee requests that the Court waive this fourteen day stay, and that any order granting this Motion be effective immediately.

40.     The purpose of Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented.  See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).  Although Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and waive the fourteen day stay, the leading bankruptcy treatise suggests that the fourteen day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure."  10 Collier on Bankruptcy 15th Ed. Rev., ¶6004.10 at 6004-18 (L. King, 15th rev. ed. 2008).  The treatise further provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal.

41.     As described above, time is of the essence.  The Debtors have ceased all operations, and the Estates are continuing to accrue storage and other costs in connection with the Assets.  The Trustee wishes to move expeditiously in order to prevent a further deterioration in net value to the Estates.  Consequently, a waiver of the Rule 6004(h) stay is in the Estates' best interest.

LEGAL\77301156\7 6009698/00635653

**Notice**

42.     Notice of this Motion will be given to the Notice Parties as described above in the Notice Procedures.  In light of the nature of the relief requested, the Trustee respectfully submits that no further notice is necessary.

WHEREFORE, the Trustee respectfully requests that the Court enter an order, in substantially the form attached: (i) approving the Asset Disposition Plan and the Notice Procedures; (ii) authorizing the Trustee to sell the Assets pursuant to the Asset Disposition Plan pursuant to sections 363(b), (f), and (m) of the Bankruptcy Code without further order of the Court; (iii) granting related relief; and (iv) providing any additional relief that may be appropriate..

Dated:  May 9, 2025

COZEN O'CONNOR

By:     /s/ John T. Carroll, III

John T. Carroll, III (No. 4060)
Simon E. Fraser (No. 5335)
1201 N. Market Street
Suite 1001
Wilmington, DE  19801
(302) 295-2000 Phone
(302) 295-2013 Fax No.
jcarroll@cozen.com
sfraser@cozen.com

David R. Doyle (IL ARDC 6303215)
(Admitted in IL/Not admitted in DE)
123 N. Wacker Drive, Suite 1800
Chicago, IL  60606
Telephone:  (312) 474-1648
Facsimile: (312) 382-8910
daviddoyle@cozen.com

*Counsel to Alfred T. Giuliano,*
*Chapter 7 Trustee*

LEGAL\77301156\7 6009698/00635653