# EXHIBIT “A”

ENGANGEMENT LETTER

| **LEGAL NAME OF SELLER:** Alfred T. Giuliano, Chapter 7 Trustee | **DATE:** 4/29/2025 |
|---|---|
| **JURISDICTION OF INCORPORATION/REGISTRATION:** N/A | **SALES REP:** |

This MULTI-CHANNEL SALES AGREEMENT (this "**Agreement**") is entered into as of the date first written above (the "**Effective Date**") by and between the applicable entity/entities set forth in the Terms and Conditions (as defined herein) ("**RB Group**") and Alfred T. Giuliano in his capacity as Chapter 7 Trustee for the bankruptcy estates (the "**Estates**") of Jack Cooper Transport Company, LLC and its affiliated debtors (the "**Debtors**") in the chapter 7 bankruptcy cases filed on March 8, 2025 in the United States Bankruptcy Court for the District of Delaware, Case No. 25-10416 (BLS) (Jointly Administered) (collectively, the "**Seller**") for the sale of Equipment through a Live Auction Event or the Marketplaces.

| **1. SELLER INFORMATION** | |
|---|---|
| **Doing Business As**<br>**Formerly Known As**<br>**Local Language Seller Name** | N/A |
| **Seller Business Address** | Giuliano Miller & Co., LLC<br>2301 E. Evesham Road<br>Pavillion 800, Suite 210<br>Voorhees, NJ 08043 |
| **Authorized Representative** | Alfred T. Giuliano |
| **Title of Authorized Representative** | Chapter 7 Trustee |
| **Phone** | 856-767-3000 Ext. 111 |
| **Fax** | 760-767-3500 |
| **Email** | atgiuliano@giulianomiller.com |

| **2. COMMERCIAL TERMS APPLICABLE TO LIVE AUCTION EVENT** | |
|---|---|
| **Equipment** | The Seller authorizes RB Group to offer and sell the equipment listed on Schedule A ("**Schedule A Equipment**") at the Live Auction Event. Schedule A lists property of the Estates of the Debtors under 11 U.S.C. Section 541 as identified by the Trustee and RB Group to be sold by auction. |
| **Delivery** | The Seller will deliver each item of Schedule A Equipment, at the Seller's cost, to the corresponding location specified in Schedule A (each a "**Site**") no later than the delivery date, if applicable, also specified therein. The Seller may elect for RB Group to arrange for delivery of the Schedule A Equipment to the Site by indicating the same in Schedule A. If delivery by RB Group is elected, the Seller will be charged a delivery fee equal to the actual cost of delivery plus 10%. |
| **Live Auction Event** | RB Group will, as agent of the Seller, offer Schedule A Equipment, together with any additional items delivered by the Seller to the Site and received by RB Group, for sale at an RB Group scheduled unreserved public auction to be held on or about on the date(s) specified in Schedule A (the "**Live Auction Event**"). |
| **Titled Equipment** | The Seller hereby appoints RB Group as its attorney-in-fact with a limited power of attorney ("**LPOA**") to execute on the Seller's behalf, all documents necessary and required to transfer title to, and permit registration of ownership of, any portion of the Schedule A Equipment to the buyer; provided, however, if original titles or a notarized LPOA are required by federal, state, provincial or local regulation to transfer title, the Seller will provide RB Group with either, as applicable, (i) signed original titles, or (ii) a notarized LPOA and unsigned original titles at least two weeks prior to the Live Auction Event. Failure to provide title(s) and/or an LPOA as required may prevent the Schedule A Equipment being made available for sale at the Live Auction Event until such documentation is provided. |

| **3. COMMERCIAL TERMS APPLICABLE TO MARKETPLACE** | |
|---|---|
| **Equipment** | RB Group will advertise for sale the equipment listed on Schedule B ("**Schedule B Equipment**", and collectively with Schedule A Equipment, the "**Equipment**") which the Seller desires to offer for sale through one or more of RB Group's online marketplaces (collectively, the "**Marketplaces**", and each a "**Marketplace**"), as indicated by the "Sale Type" selected by the Seller and to be noted on Schedule B. |
| **Listing Fees** | Intentionally deleted. |
| **Equipment Condition** | The Seller agrees that the Schedule B Equipment will remain in the same or better condition as when previously inspected by RB Group. In the event of any unforeseen machine failure, the Seller agrees to make the necessary repairs to bring the Schedule B Equipment to the same condition as when inspected by RB Group. |
| **Titled Equipment** | The Seller hereby appoints RB Group as its attorney-in-fact with a limited power of attorney ("**LPOA**") to execute on the Seller's behalf, all documents necessary and required to transfer title to, and permit registration of ownership of, any portion of the Schedule B Equipment to the buyer; provided, however, if original titles or a notarized LPOA are required by federal, state, provincial or local regulation to transfer title, the Seller will provide RB Group with either, as applicable, (i) signed original titles, or (ii) a notarized LPOA and unsigned original titles at least two weeks prior to the time of listing. Failure to provide title(s) and/or an LPOA as required may prevent the Schedule B Equipment being made available for sale on the Marketplace(s) until such documentation is provided |

**4. GENERAL COMMERCIAL TERMS**

| | |
|---|---|
| **Proceeds** | Unless otherwise specified in writing, the Seller acknowledges that there is no guarantee whatsoever as to the gross proceeds to be realized from the sale of the Equipment. |
| **Title Transfer Fees; Lien Search Fees** | The Seller will pay lien search fees, title transfer fees and any other fee applicable as set out in the Terms & Conditions for each unit of Equipment, unless otherwise specified. RB Group will deduct such fees from any amounts owing to the Seller. |
| **Commission Rate** | RB Group will be entitled to a commission based on the gross sale price received for each piece of Equipment as follows 7.75% for any lot.<br><br>Seller Initials [ ] RB Group Initials [DN] |
| **Terms & Conditions** | This Agreement incorporates the terms and conditions attached hereto as Schedule C ("**Terms and Conditions**"). By initialing here, the Seller acknowledges that (i) the Seller has received a copy of the Terms and Conditions with this Agreement, (ii) it is the Seller's responsibility to familiarize itself with the Terms and Conditions, and (iii) the Seller is bound by the Terms and Conditions.<br><br>[Initial] |
| **Refurbishment and Additional Services** | The Seller elects to have RB Group arrange for the welding, sandblasting, painting, cleaning, and other refurbishing (the "**Refurbishing**") of the Equipment to a standard acceptable to RB Group. ☒ **YES** **OR** ☐ **NO**<br><br>Should RB Group organize and pay for the Refurbishing of any part of the Equipment or additional services including but not limited to consultants, former employees of the Seller, security or insurance in order to support the sales of the Equipment pursuant to this Agreement RB Group will be reimbursed for these costs plus 10% provided that the total cost will not exceed twenty five thousand dollars ($25,000 USD) without the Seller's consent and such costs shall be deducted from proceeds of the sale of the Equipment.<br><br>Should RB Group be required to pay for any services including but not limited to consultants, former employees of the Seller, security or insurance in order to support the sales of the Equipment pursuant to this Agreement, RB Group will be reimbursed for these costs plus 10% which will be deducted from proceeds of the sale of the Equipment. Any deductions by Ritchie Brothers from sales proceeds for services or commissions under this Agreement shall be considered monies disbursed by the Trustee in accordance with 11 U.S.C. section 326(a). |
| **Fuel/Batteries Cost** | The Seller will reimburse RB Group for the cost plus 10% of fuel and batteries as RB Group deems necessary for demonstration and sale of the Equipment, if applicable. Such costs will be deducted from proceeds of the sale of the Equipment. |
| **5. LIENS/ENCUMBRANCES – INTENTIONALLY DELETED** | |
| **6. MISCELLANEOUS** | |
| **Entire Agreement; Priority** | This Agreement, together with the Terms and Conditions, contains the entire agreement of the parties with respect to the subject matter hereof and supersedes all previous communications, representations, understandings and agreements, either oral or written, between the parties. In the event of a conflict between the provisions of this Agreement and the Terms and Conditions, this Agreement will control. |
| **Counterparts** | This Agreement may be executed in counterparts, each of which will be considered an original, but all of which together will constitute the same instrument. Execution and delivery of this Agreement may be evidenced by facsimile, PDF, electronic signature, or acknowledgement email and will hold the same force and effect as an original signature for purposes of binding the parties. |
| **Term** | This Agreement is valid only for the Equipment listed on Schedule A and Schedule B from the Effective Date until such Equipment is sold or withdrawn pursuant to the terms of this Agreement but shall be valid for a minimum of six (6) months from the effective date of this Agreement. |
| **Currency and Payment** | Unless otherwise stated in the Terms and Conditions, all prices noted in this Agreement are listed in the currency of the country in which the Equipment is located at the time such Equipment is offered for sale. The same currency will be used for invoice and payment. |
| **Land** | The Seller shall ensure that any land owned or leased by the Seller where the Equipment is located for sale will remain available up to and including the end of the buyer pick up timeframe for the sale of each item of Equipment. If the Seller is required to relocate such Equipment to a nearby location due to the land where the Equipment is located no longer being available, the RB Group shall do so at the Seller's cost. |
| **Bankruptcy** | The Seller agrees to as promptly as reasonably practicable seek by motion (the "Approval Motion") an entry of an order approving this Agreement and of RB Group for the services set forth in this Agreement (the "Approval Order") from the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), in form and substance acceptable to RB Group. The Seller shall provide RB Group with a draft of the Approval Motion seeking such Approval Order and a draft of the proposed Approval Order at least two (2) business days before filing them with the Bankruptcy Court. The Seller shall use reasonable efforts to ensure that the Approval Order specifically provides that: (i) this Agreement is approved according to its terms; (ii) RB Group is being retained to perform all services under the terms set forth under the Agreement; (iii) RB Group constitutes a disinterested party and holds no interest adverse to the estate; (iv) RB Group is entitled to all fees and costs as set forth under the terms of this Agreement without further application to or approval of the Bankruptcy Court, which amounts shall be free and clear of all liens, claims and interests and shall be entitled to payment |

| | |
|---|---|
| | as a super priority administrative expense from proceeds of sale senior to all other claims, liens and interest; (v) RB Group shall not be required to comply with any licensing restrictions; (vi) RB Group is authorized to employ third parties in connection with the performance of its services under this Agreement; (vii) RB Group is not required to maintain time records, and (viii) no valid and perfected lien in any Equipment or other collateral subject to a certificate of title shall be invalid or unperfected as a result of the transfer of the possession of such original certificates of title to RB Group to facilitate the sale of the Equipment or such other collateral pursuant to the terms of this Agreement. RB Group acknowledges that the Seller's obligations under this Agreement are only enforceable in the event, and to the extent, this Agreement is approved by the Bankruptcy Court pursuant to the Approval Order.<br><br>The Seller shall conduct searches or use other means available, as deemed necessary by the Seller for the disclosure of liens and encumbrances, and include all such creditors in the Bankruptcy Court notices seeking authority to sell the Equipment. In no case will RB Group have a duty to conduct such searches, nor be responsible for the result thereof. Seller shall not be responsible for paying any lien searches conducted by RB Group. |
| **7. ADDITIONAL PROVISIONS** | |
| **Sale Process** | RB Group shall work in a manner that seeks to maximize value for the Seller, making every effort to turn the Equipment into cash efficiently without jeopardizing the value by needlessly oversaturating the market.<br><br>RB Group in their sole discretion will market and sell the Equipment. RB Group reserves the right to move Equipment between Schedule A and Schedule B in their sole discretion and advise when appropriate on use of private treaty or private sales. Any private sales shall be done in consultation with the Seller.<br><br>Unless consented to in writing by the Seller, RB Group and its affiliates shall not enter into any agreement with any other party to market, offer or sell any equipment that was or is owned or leased by Seller or any of its affiliates. |
| **Limited Power of Attorney** | The Seller hereby appoints RB Group as its attorney-in-fact with a limited power of attorney ("LPOA") to execute on the Seller's behalf, all documents necessary and required to transfer title to, and permit registration of ownership of, any portion of the Schedule A Equipment to the buyer; provided, however, if original titles or a notarized LPOA are required by federal, state, provincial or local regulation to transfer title, the Seller will provide RB Group with either, as applicable, (i) signed original titles, or (ii) a notarized LPOA and unsigned original titles at least two weeks prior to the Live Auction Event. Failure to provide title(s) and/or an LPOA as required may prevent the Schedule A Equipment being made available for sale at the Live Auction Event until such documentation is provided. |

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed by their duly authorized representatives as of the Effective Date, and each represents and warrants to the other that it has validly entered into this Agreement and has the legal power to do so.

| | | | |
|---|---|---|---|
| **SELLER:** Alfred T. Giuliano in his capacity as Chapter 7 Trustee for the bankruptcy estates of Jack Cooper Transport Company, LLC and its affiliated debtors | | | |
| Name: | Alfred T. Giuliano | Title: Chapter 7 Trustee | |
| **By (*Signature*):** | | **Date Signed:** | |

| | | | |
|---|---|---|---|
| **RITCHIE BROS. AUCTIONEERS (AMERICA) INC.** | | | |
| Name: | Devin Norris | Title: | National Director – Finance & Insolvency |
| **By (*Signature*):** | [signature] | **Date Signed:** | **4/29/2025** |

| | | | |
|---|---|---|---|
| **IRONPLANET, INC.** | | | |
| Name: | Devin Norris | Title: | National Director – Finance & Insolvency |
| **By (*Signature*):** | [signature] | **Date Signed:** | **4/29/2025** |

| | | | |
|---|---|---|---|
| **RITCHIE BROS. AUCTIONEERS (CANADA) LTD.** | | | |
| Name: | Devin Norris | Title: | National Director – Finance & Insolvency |
| **By (*Signature*):** | [signature] | **Date Signed:** | **4/29/2025** |

| | | | |
|---|---|---|---|
| **IRONPLANET CANADA LTD.** | | | |
| Name: | Devin Norris | Title: | National Director – Finance & Insolvency |
| **By (*Signature*):** | [signature] | **Date Signed:** | **4/29/2025** |

**SCHEDULE A TO AGREEMENT**

**EQUIPMENT FOR LIVE AUCTION EVENT**

SELLER'S NAME:

| # | Item Description –<br>Manufacturer, Model, Serial Number, Description<br>Auction Event and Date, Delivery | Encumbrance Holder<br>(if none, state 'nil') | Amount Owing on Encumbrance |
|---|---|---|---|
| 1. | Property of the Estates of the Debtors under 11 U.S.C. Section 541 as identified by Trustee and RB Group to be sold by auction | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |
| 9. | | | |
| 10. | | | |

| Seller | RB Group |
|---|---|
| | DN |

**SCHEDULE B TO AGREEMENT**

**EQUIPMENT FOR ONLINE MARKETPLACE SALE**

SELLER'S NAME:

| # | Item Description – Manufacturer, Model, Serial Number, Description | Encumbrance Holder (if none, state 'nil') | Amount Owing | Sale Type | Inspection Type |
|---|---|---|---|---|---|
| 1. | Property of the Estates of the Debtors under 11 U.S.C. Section 541 as identified by Trustee and RB Group for sale by online marketplaces or means other than auction | | | | |
| 2. | | | | | |
| 3. | | | | | |
| 4. | | | | | |
| 5. | | | | | |
| 6. | | | | | |
| 7. | | | | | |
| 8. | | | | | |
| 9. | | | | | |
| 10. | | | | | |

| Seller | RB Group |
|---|---|
| | DW |

| LEGEND: | |
|---|---|
| **Inspection Reqs:** | **FI** = Full Inspection<br>**B** = Photos and Basic Functionality<br>**PO** = Photos Only (non-powered units) |

**SCHEDULE C TO AGREEMENT**

**TERMS AND CONDITIONS**

The following terms and conditions (the "**Terms**") apply to any listing agreement, marketplace services agreement, preferred provider agreement or multi channel sales agreement between you and RB Group (each a "**Sales Agreement**", collectively with the Terms, the "**Agreement**") and are in addition to the terms and conditions set out in the Sales Agreement. These Terms are separated into four sections as follows:
A. Terms and Conditions applicable to both Live Auction Events and Online Marketplaces
B. Terms and Conditions Applicable to Only Live Auction Events
C. Terms and Conditions Applicable to Only Online Marketplaces
D. General Fees for Equipment
Please ensure you review each and every section relevant to your Agreement. Unless otherwise defined in these Terms, capitalized words have the meanings provided in the Sales Agreement.

**A. TERMS AND CONDITIONS APPLICABLE TO BOTH LIVE AUCTION EVENTS AND ONLINE MARKETPLACES**

**1. Contracting Party, Notice, Governing Law**. Unless otherwise indicated in the Sales Agreement, the applicable RB Group contracting entity, notice address, governing law/venue, and currency will depend on the location of Equipment at the time of sale, and shall be as set forth in the table below. Any notice sent shall be sent to the attention of Legal Affairs at the notice address for the applicable RB Group contracting entity set out below with a copy to legal@ritchiebros.com. Any legal action brought by the Seller arising from or relating to this Agreement shall be litigated exclusively in the jurisdiction of the applicable RB Group contracting entity set out in the table below and the parties irrevocably attorn to such jurisdiction for the resolution of such disputes. Any legal action brought by RB Group arising from or relating to this Agreement shall be litigated exclusively in the jurisdiction of the applicable RB Group contracting entity set out in the table below or, at the sole discretion of such RB Group contracting entity, any jurisdiction in which the Seller maintains a place of business, assets or an agent for the service of process, and the parties irrevocably attorn to such jurisdiction for the resolution of such disputes. In the event that the below table provides for more than one jurisdiction applicable to the Sales Agreement, RB Group may elect which of the applicable jurisdictions applies to any legal action brought by RB Group. Where applicable, the parties irrevocably waive the right to demand a trial by jury in any dispute arising from or relating to this Agreement.

| **Location of Assets at Time of Sale** | **RB Group Contracting Entity** | **Notice Address** | **Governing Law** | **Governing Venue** | **Currency** |
|---|---|---|---|---|---|
| United States | Live Auction<br>Ritchie Bros. Auctioneers (America) Inc.<br><br>Marketplace<br>IronPlanet, Inc | 4000 Pine Lake Road, Lincoln, NE USA 68516 | Washington | King County, Washington | USD |
| Canada | Live Auction<br>Ritchie Bros. Auctioneers (Canada) Ltd.<br><br>Marketplace<br>IronPlanet Canada Ltd. | 9500 Glenlyon Parkway, Burnaby, BC V5J 0C6 | British Columbia | New Westminster, British Columbia | CAD |

**2. Limitation Period**. YOU AGREE THAT ANY CLAIM YOU BRING ARISING OUT OF OR RELATED TO THIS AGREEMENT MUST BE COMMENCED WITHIN SIX MONTHS AFTER THE DISPUTE AROSE, AND IF NOT COMMENCED TIMELY SHALL BE PERMANENTLY BARRED.

**3. Improperly Filed Legal Disputes**. Any claims by Seller that are filed or brought contrary to this Agreement shall be improperly filed and of no force and effect.

**4. Creation of Lien**. In addition to any other rights or remedies available to RB Group, this Agreement creates a lien and charge upon the Equipment and may be registered under any applicable personal property security legislation as may be in effect from time to time and entitles RB Group to seize and retain possession of the Equipment as security for, and to sell the Equipment to recover, all sums owing hereunder.

**5. Seller's Representations and Warranties.** The Seller represents and warrants that: (a) the Equipment is, and on the date of sale will be, owned by the Seller free and clear of any and all registered and unregistered liens, security interests, tax or duty obligations or other encumbrances or contrary claims whatsoever ("**Encumbrances**"), except (i) the liens and security interests granted to Cerberus Business Finance Agency, LLC (or any sub-agent, custodian or bailee thereof) described in that certain Credit Agreement, dated as of November 4, 2019, as amended, supplemented or otherwise modified from time to time, by and among each Seller entity party thereto, the lenders from time to time party thereto and Cerberus Business Finance Agency, LLC, as agent, and the other Loan Documents (as defined therein) and (ii) as set out in the applicable Schedule A and Schedule B of the Sales Agreement; and to the best of the Seller's knowledge, information and belief that: (b) the Equipment is in good operating condition, free of material defects, except as disclosed to RB Group on the applicable Schedule; (c)

intentionally deleted; (d) the description of the Equipment shall be accurately set forth on the applicable Schedule, and in the case of all motor vehicle Equipment, such Equipment has never been re-built, salvaged or glidered except as disclosed to RB Group; (e) all odometer and hour meters on the Equipment reflect actual mileage or usage unless otherwise disclosed to RB Group on the applicable Schedule of the Sales Agreement; (f) the offering for sale, advertising or selling of the Equipment will not contravene or infringe upon any patent, copyright, trademark, agreement or similar right of any third party; (g) the Equipment has not been modified or tampered with in any manner that would be contrary to applicable legislation or misleading to a potential buyer, including, but not limited to, tampering with emission control devices; (h) the Equipment has not been fraudulently obtained, is not stolen or counterfeit; and (i) the Seller and its signatories are duly authorized to enter into this Agreement and to complete and deliver all Schedules that are delivered to RB Group. Notwithstanding anything stated above, all Equipment sold by RB Group shall deemed to be sold free and clear of all Encumbrances pursuant to Bankruptcy Code sections 363 and 105.

6. **Intentionally deleted**.

7. **Transaction Fee**. You acknowledge that RB Group may charge buyers ("**Buyers**") a transaction fee based on the selling price of each lot. Buyer's fees payable by Buyer to RB Group are as follows:

| **Winning Bid for a Lot** | **Transaction Fee** |
|---|---|
| **USD $25,000 or less** | **10% of the winning bid; with a minimum fee of USD $100 per Lot** |
| **Greater than USD $25,000 up to and including USD $75,000** | **5% of the winning bid; with a minimum fee of USD $2,500 per Lot** |
| **Greater than USD $75,000** | **USD $3,750** |

8. **No Buybacks or Price Manipulation.** You shall not bid or make an offer, directly or indirectly, nor allow any other person to bid or make an offer on your behalf, by agency or otherwise, on the Equipment or any part thereof. In the event of price manipulation or a buyback, RB Group may, at its option: (a) ban you from future use of the Marketplace and/or participation at a Live Auction Event; (b) cancel any involved transaction(s); and (c) charge you a Buyback Charge set out in Section D.

9. **Additional Services**. You may request any of the services outlined in Section D in association with the sale of Equipment and you agree to pay all fees due for services completed. The cost of the services will be deducted from amounts otherwise due to Seller when available. Otherwise, service fees will be invoiced directly to Seller.

10. **Right of Set-Off**. RB Group may, in its discretion, apply any proceeds from the sale of the Equipment towards any outstanding amounts otherwise due and owing to RB Group in connection with any purchases, deficiencies or services rendered by RB Group.

11. **Specific Performance**. In addition to any other remedies that may exist, (i) for listings on the Marketplace, if you cancel a listing within two weeks prior to the listing opening time or if you fail to have the Equipment available for transportation no later than one business day following the creation of a Binding Obligation (as defined below) with the Buyer or (ii) you fail to deliver the Equipment to the Site or withdraw the Equipment from a Live Auction Event, you hereby acknowledge and agree that (a) the damages to RB Group's business reputation, brand and customers are significant and irreparable, (b) an adequate remedy at law for such breach is inadequate, and (c) RB Group may seek enforcement of this Agreement by means of specific performance or injunction, without any requirement to post a bond or other security, and you waive all rights to object to such an application.

12. **Indemnification**.

12.1. **Indemnity**. Except with respect to matters relating to RB Group's gross negligence, bad faith or fraud, you will indemnify and save RB Group, its subsidiaries and affiliates, and each of their officers, directors, shareholders, employees and agents, harmless against any and all claims, demands, suits, actions, causes of action, damages, costs or charges whatsoever arising from: (a) any breach of the representations, warranties or covenants set out in this Agreement; (b) hazardous materials associated with the Equipment or contamination resulting from any leakage, spills, or malfunction of the Equipment; (c) deficiencies in the provision of documents required for the purpose of titling or registering any part of the Equipment by any Buyer thereof; (d) encumbrances against or defects in title to, or taxes or customs duties payable in respect of, the Equipment or any part thereof; (e) payments by RB Group on account of any registered or unregistered charges, liens, or other interests claimed by creditors or any person or authority in respect of the Equipment, whether or not disclosed, in order to clear title to the Equipment; (f) any deficiency in compliance with any applicable environmental rules or regulations; (g) your improper use of the Marketplace; (h) any tax, cost or expense arising from your failure to satisfy any laws or regulations in relation to a transaction; and (i) any negligence, unlawful act, or willful misconduct by you in connection with the Agreement.

12.2. **Notice of Claim**. RB Group shall promptly notify you in writing of any threatened or actual claim or demand RB Group becomes aware of and may, in its discretion, permit you to assume its defense. Upon receipt of such notice indicating a right to assume the defense, you will have ten (10) business days to confirm your intention by written notice to RB Group. If you elect to assume its defense, RB Group will reasonably cooperate with you to facilitate the settlement or defense thereof. You shall have sole control of the defense or settlement of any claim or demand, provided that RB Group, at its option and expense, may participate and appear on equal footing with you and that you obtain our written approval of any settlement of the claim or demand which will not be unreasonably withheld. If, however, RB Group chooses to defend itself, or you fail to confirm your assumption of its defense, RB Group may defend or settle the claim or demand in any manner it deems appropriate. Where you fail to confirm your assumption of its defense or the claim or demand arises out of your breach of any representations, warranties or covenants set out in this Agreement, You agree to indemnify and save RB Group, its subsidiaries and affiliates, and each of their officers, directors, shareholders, employees and agents, harmless against any and all expenses incurred by the foregoing parties to defend the matter (including reasonable attorney and court or other tribunal fees) and any subsequent settlement into or judgment entered as a result.

13. **Risk of Loss.** The Seller shall be responsible for loss or damage to the Equipment, other than loss or damage arising as a result of the negligence of RB Group, its agents or employees, until the earliest of: (a) if the Equipment is sold through a Live Auction Event, the removal of the Equipment from the Site by the Buyer; (b) if the Equipment is sold through a Marketplace, the removal of the Equipment from Seller's location or other applicable storage location of the Equipment; or (c) regardless of the venue through which the Equipment is sold, receipt by the Seller of all proceeds from the sale of the Equipment. The Seller shall insure the Equipment, with RB Group a loss payee, to its fair market value against all perils so that in the event of damage to, or destruction of, the Equipment or any part thereof, all insurance proceeds shall be credited to the gross proceeds of the sale, regardless of the venue through which the Equipment is sold, and payment made to RB Group forthwith for all deductions permitted by this Agreement and shall, upon request, provide RB Group with a copy of the insurance certificate, or other documentation evidencing RB Group as a loss payee, to the satisfaction of RB Group.

14. **Termination, Rescission and Default**. RB Group shall have the right, in its sole discretion, to terminate this Agreement in whole or in part if (a) there are Encumbrances on or to any Equipment in addition to those that are listed in the Sales Agreement, (b) your net proceeds are insufficient to discharge creditor claims and pay RB Group's fees after title is cleared, (c) your lien holders are unwilling to release liens and/or allow Equipment to be listed for sale, (d) you are in breach of the Agreement, (e) you have provided inaccurate, fraudulent, outdated or incomplete information during the registration or listing process or thereafter, (f) you have violated applicable laws, regulations or third party rights, (g) RB Group believes in good faith that such action is reasonably necessary to protect the safety or property of other customers, RB Group personnel or third parties, or (h) termination is required for fraud prevention, risk assessment, security or investigation purposes. In the event of such termination, in addition to any other remedies available to RB Group, you shall pay RB Group (i) the Listing Fee, if applicable, and (ii) any costs incurred by RB Group. In addition to the foregoing, in the event of termination as a result of items (d), (e), (f), (g), or (h) of this Section 14, you shall pay RB Group 15% of the estimated market value of Equipment as determined by RB Group.

15. **General**. This Agreement contains the entire agreement of the parties and supersedes all previous communications, representations, understandings and agreements, either oral or written, between us. In the event of a conflict between these Terms and the Sales Agreement, the Sales Agreement shall control. If any provision of this Agreement is held by a court of competent jurisdiction to be invalid or unenforceable, then such provision shall be struck out and the remaining provisions shall continue in full force and effect. The failure by either party to exercise or enforce any rights or provisions of this Agreement shall not constitute a waiver of such right or provision. No partnership, joint venture, or agency relationship is intended or created by this Agreement. In the event of an assignment, this Agreement shall bind and inure to the benefit of the parties, their respective successors and permitted assigns. To the extent any novation is required for RB Group to assign this Agreement, you hereby appoint the officers of RB Group as your attorney-in-fact to execute all documents necessary to effect such novation. All provisions in this Agreement regarding representations and warranties, indemnification, disclaimers, limitations on liability, and payment obligations for fees incurred prior to the termination date shall survive any termination of this Agreement. Any delay in the performance of any duties or obligations of either party will not be considered a breach of this Agreement if such delay is caused by a labor dispute, market shortage of materials, fire, earthquake, flood or any other event beyond the control of such party, provided that such party uses reasonable efforts, under the circumstances, to resume performance as soon as reasonably practicable.

16. **Privacy**. Information provided in the Sales Agreement or under these Terms will be retained by RB Group in accordance with RB Group's Privacy Statement, provided on www.rbauction.com.

17. **Trademarks.** In connection with the Seller's use of the Marketplace and/or Live Auction Event, RB Group may use the Seller's name, trademark, logos, service marks and other designations ("Marks") to list the Seller as a reference customer and to advertise, promote and market the Equipment. The Seller hereby grants to RB Group, and represents and warrants that the Seller has a right to grant, a non-exclusive, worldwide license to use, publicly display and perform, reproduce, and distribute the Marks, solely as permitted in this Agreement, including distributing e-mails to potential buyers that incorporate Marks.

**B. TERMS AND CONDITIONS APPLICABLE TO ONLY LIVE AUCTION EVENTS**

Unless otherwise noted in the Sales Agreement, the below terms and conditions will apply to all sales of equipment through a Live Auction Event. All references to "Equipment" in this Section B shall refer to equipment that the Seller is selling through a Live Auction Event.

**1. RB Group Obligations and Responsibilities**

**1.1. Sale Sites and Dates**. RB Group shall, as your agent but in our own name, offer the Equipment for sale at an unreserved auction at the Site and on or about the date specified in the Sales Agreement. You shall provide to RB Group a completed Schedule A no later than 15 days prior to the scheduled Live Auction Event. If advertising of specific pieces is requested in the auction brochure, you must provide a completed Schedule A to RB Group at least 30 days before the scheduled Live Auction Event.

**1.2. Payment**. RB Group shall make payment to you within 21 days after the Live Auction Event the amount due and owing to you from monies collected from the sale of the Equipment after making all deductions permitted under this Agreement. Payment will only be made out in the Seller's name or to a bank account confirmed as belonging to the Seller.

**1.3. Document Administration Fees; Lien Search Fees**. A document administration fee for each item of Equipment requiring title, registration documents or customs documents will be charged as set out in the applicable jurisdiction-specific clause in Section B. 6. RB Group will conduct lien searches as it deems necessary and lien search fees will apply as set out in RB Group's standard Fee Schedule detailed in Section D.

**1.4. Taxes**. You shall be responsible for the payment of any tax or duty that is your responsibility as a seller of the Equipment. Where applicable, RB Group shall collect and remit state and local sales tax arising upon the sale of the Equipment at the Live Auction Event. All commissions, fees and other amounts payable to RB Group arising pursuant to this Agreement are deemed to be exclusive of any VAT (if applicable).

**1.5. Lots**. RB Group may divide the Equipment into such lots as it may in its absolute discretion deem desirable for a Live Auction Event. RB Group shall not be liable for any loss or damages claimed in respect of the manner in which the Equipment is divided into lots nor in respect of any failure by RB Group to divide the Equipment into lots.

**2. Seller's Obligations and Responsibilities**

**2.1. Delivery**. At your cost, you shall deliver the Equipment: (a) in good operating condition, free of material defects except as disclosed to RB Group, with adequate fuel and batteries and starting at the key; (b) free of hazardous materials other than normal operating fuels, oils and lubricants; and (c) in compliance with all applicable environmental, health and safety rules and regulations, together with all documents

evidencing your title and/or necessary to transfer title to the Equipment, properly endorsed. At our discretion, RB Group may assist you or your transport provider to load or unload Lots under their supervision. Except with respect to matters relating to RB Group's gross negligence, bad faith or fraud, you indemnify us against all claims, liabilities and damages that may arise as a result of our assistance in (un)loading such Lots.

**2.2.** **Unreserved Auction Sale**. You acknowledge that Live Auction Events are unreserved and RB Group shall have no obligation or duty to withdraw the Equipment or any part thereof from the Live Auction Event or to cancel the Live Auction Event. The Equipment shall be sold to the highest bidder on the date of the Live Auction Event.

**3.** **Mutual Agreements**

**3.1.** **Prohibition of Pre-Sale**. Neither RB Group nor you shall sell or offer for sale any part of the Equipment prior to the Live Auction Event without the written permission of the other Party, except that RB Group may offer Equipment for sale prior to, but in conjunction with, the Live Auction Event by way of PriorityBid.

**3.2.** **Default by Seller**. If: (a) you withdraw or fail to timely deliver the Equipment or any part thereof or any documents required hereunder, or if the Live Auction Event does not occur as a result of your actions or inaction, including without limitation the commencement of liquidation or bankruptcy proceedings of any sort by or against you; or (b) you, directly or indirectly, bid or permit another to bid on your behalf or for your benefit, by agency or otherwise, on the Equipment or any part thereof at the Live Auction Event; or (c) your representations and warranties set out in this Agreement are not true, complete and correct in all material respects; then: (i) commissions shall be payable to RB Group upon demand, based upon the fair market value (as determined by RB Group in its sole discretion) of any withdrawn or undelivered parts of the Equipment as if they had been sold; (ii) any advances made by RB Group together with accrued interest shall become due and repayable immediately; and (iii) you will, upon demand, reimburse RB Group for all out-of-pocket expenses incurred in preparation for the Live Auction Event. In the event you are in violation of paragraph 3.2(b) above, in addition to any other rights or remedies RB Group may have under this Agreement, RB Group shall, at its sole discretion, have the right to sell or re-sell the Equipment by whichever means it deems appropriate and you shall pay to RB Group as liquidated damages in addition to all other amounts due hereunder, an amount equal to 15% of the proceeds realized from such sale or resale. If, pursuant to this Section, the Equipment or any part thereof is not sold at the Live Auction Event, such equipment shall be deemed to have been withdrawn by you and the provisions of paragraph 3.2(i), 3.2(ii) and 3.2(iii) above shall apply.

**3.3.** **Use of Equipment**. You authorize RB Group to operate the Equipment for the purpose of demonstrating it at the Live Auction Event.

**3.4.** **Collection of Proceeds**. RB Group shall collect the full proceeds from the sale of the Equipment and you assign to RB Group: (a) the amount required to discharge and satisfy all Encumbrances in respect of the Equipment; and (b) all amounts payable to RB Group hereunder, including commission and any advances, together with interest thereon which shall be repayable at the time of the sale.

**3.5.** **Uncollected Proceeds**. RB Group may, as it deems necessary in its sole discretion, re-sell any part of the Equipment not sold or paid for at the Live Auction Event through either a subsequent Live Auction Event or on the Marketplace, and you acknowledge that no monies shall be payable by RB Group for any part of the Equipment until it has been paid for in full by the Buyer.

**3.6.** **Other Consignments**. Equipment belonging to other owners may be sold at the Live Auction Event.

**3.7.** **Internet Bidding and Timed Auction Lot System**. RB Group may in its sole discretion offer lots for sale in its unreserved auction to registered bidders using its proprietary online bidding service or using its timed auction lot system. You acknowledge that at any given sale: (a) only those lots which RB Group deems appropriate shall be offered using such technologies and systems, and (b) certain circumstances concerning the Internet and the technology in use are beyond RB Group's control, and such systems may not be available at any given time or Live Auction Event. YOU ACKNOWLEDGE THAT RB GROUP MAKES NO PROMISES TO YOU WHATSOEVER REGARDING THE AVAILABILITY OF ITS ONLINE BIDDING SERVICE OR TIMED AUCTION LOT SYSTEM OR THE PROCEEDS OF SALE TO BE REALIZED AS A RESULT OF THEIR USE. YOU AGREE THAT RB GROUP SHALL NOT BE LIABLE TO YOU WHATSOEVER FOR ANY AND ALL LOST PROFITS, REVENUES, DAMAGES, COSTS OR CHARGES ARISING FROM (1) THE FAILURE OF THE INTERNET, SERVERS OR OTHER COMPUTER OR COMMUNICATIONS COMPONENTS AND SYSTEMS, REGARDLESS OF WHETHER SUCH FAILURE IS CAUSED BY THE NEGLIGENCE OF RB GROUP, (2) RB GROUP'S DECISION WHETHER OR NOT TO USE SUCH TECHNOLOGIES OR SYSTEMS, OR (3) ITS FAILURE TO OFFER SUCH SYSTEMS AT ANY TIME.

**4.** **Virtual Sales from Seller's Yard for a Live Auction Event.** These provisions apply to any piece of Equipment to be sold at a Live Auction Event on a virtual basis from the Seller or a third party's yard.

**4.1.** **Additional Terms.** Any such Equipment to be sold on the Seller or a third party's yard virtually shall be staged in compliance with the provisions listed in sections 4.1.1 through 4.1.5 below. The Seller agrees that the following additional terms shall apply:

**4.1.1.** the Seller shall provide, at no cost to RB Group and commencing upon the execution and delivery of this Agreement, a suitable and secure staging site acceptable to RB Group for staging for the applicable Live Auction Event (each, a "**Staging Site**");

**4.1.2.** the Seller shall ensure that RB Group and its employees and subcontractors are provided with access to each Staging Site as RB Group deems necessary for preparation and conduct of the Live Auction Event;

**4.1.3.** each Staging Site must be suitable for tear-down and transport crews to access for the removal of the Equipment between the hours of 8:00 a.m. and 5:00 p.m. (local time) on regular business days beginning on the day after the Live Auction Event and ending a minimum of four weeks thereafter;

**4.1.4.** the Seller shall ensure that property damage and public liability insurance is maintained in full force and effect throughout the period described in this section to cover third party personal injury, death or property damage claims. The Seller will ensure that RB Group is named as additional insured and, upon request, RB Group will be provided with a copy of the insurance certificate, or other documentation evidencing RB Group as an additional insured, to the satisfaction of RB Group; and

**4.1.5.** the Seller shall be responsible for loss or damage to the Equipment, other than loss or damage arising as a result of the negligence of RB Group, its agents or employees, until the earliest of: (a) the removal of the Equipment from the Staging Site by the Buyer; or (b) receipt by the Seller of all proceeds from the sale of the Equipment.

**4.2.** **Indemnity.** Except with respect to matters relating to RB Group's gross negligence, bad faith or fraud, The Seller shall defend, indemnify and save harmless RB Group from any and all liabilities, damages, costs (including reasonable attorney's fees), claims, suits or actions arising out of any contravention of applicable laws (including, but not limited to, environmental laws), property damage or injury to a person or persons, including death resulting at any time therefrom, arising out of: (a) the attendance of the Seller's employees, agents, subcontractors or

potential buyers at the Staging Site; (b) the inspection or use of any Equipment by the Seller's employees, agents, subcontractors or potential buyers; (c) the inspection of the Equipment by RB Group; (d) the spill or release, unintentional or otherwise, of any toxic, dangerous or hazardous chemicals, materials, substances, pollutants or wastes, or any other requirements relating to pollution or protection of human health and safety of the environment; and (e) failure to comply with environmental laws, regulations, bylaws, standards, policies, or other requirements relating to pollution or protection of human health and safety and the environment.

**4.3. Equipment Inspections (IronClad Assurance)**

**4.3.1.** Any Equipment sold virtually in accordance with Section B. 4., from Seller's yard in a Live Auction Event, is subject to IronClad Assurance® certification, Seller agrees to permit RB Group and/or its authorized representatives to test and inspect each piece of Equipment at a time and place mutually agreed. RB Group shall produce an inspection report ("**Inspection Report**") for each piece of Equipment inspected by RB Group. RB Group inspections are solely for the purpose of reporting on the visible condition of the Equipment's major systems and attachments. RB Group inspections are NOT intended to detect latent or hidden defects or conditions that could only be found in connection with the physical dismantling of the Equipment or the use of diagnostic equipment or techniques.

**4.3.2.** Seller is responsible for maintaining the Equipment in the same condition as documented in the Inspection Report until it is removed from the Staging Site by the Buyer. Seller's failure to properly maintain the Equipment from the date of inspection until its removal from Staging Site by Buyer will void the inspection.

**4.3.3.** The Inspection Report is the sole and exclusive property of RB Group. Except as expressly stated, nothing in this Agreement shall be deemed to grant to any other party, by implication or otherwise, license rights, ownership rights or any other intellectual property rights in the Inspection Report. Seller cannot use the Inspection Report for any other purpose without the prior written approval from RB Group.

**4.3.4.** From the time an inspection is performed by RB Group until the Equipment is removed from Staging Site by or on behalf of the Buyer, Seller may not operate, lease, rent, modify or alter the Equipment. In addition to any other rights and remedies that RB Group may have, a breach of this provision prior to the conclusion of a sale for the Equipment may result in either of the following: (i) RB Group may remove the Equipment from the Live Auction Event and charge Seller a removal charge equal to [25]% of RB Group's estimated market value for the Equipment; or (ii) RB Group may continue with selling the Equipment in the Live Auction Event, in which case, if the Equipment was inspected previously by RB Group, Seller must have the Equipment re-inspected and pay RB Group a re-inspection fee equal to $295. In the event that a breach of this provision is determined by RB Group, in its reasonable discretion, and the Equipment has been sold to a Buyer, the transaction is subject to cancellation and Seller will be charged a Seller Default Fee equal to [25]% of the winning bid price, in addition to reimbursement of transportation and other costs incurred by the Buyer.

**4.3.5.** IronClad Assurance and Listing Fees – Each piece of Equipment sold virtually at the Live Auction Event is required to obtain IronClad Assurance® certification. A listing fee (the "**Listing Fee**") will apply to each piece of Equipment being sold virtually at the Live Auction Event. Seller agrees to pay RB Group any applicable Listing Fee.

**5. Live Auction Event on Seller's Yard**. These provisions apply to any Equipment to be sold through a Live Auction Event to be held on the Seller's yard (each a "**Sale Site**").

**5.1. Additional Terms.** All Equipment will remain at the Seller's yard and will be sold onsite. Equipment to be sold on the Seller's yard shall be in compliance with the provisions listed in sections 5.1.1 through 5.1.6 below:

**5.1.1.** the Seller shall provide, at no cost to RB Group and commencing upon the execution and delivery of this Agreement, a suitable and secure sale site acceptable to RB Group for the applicable Live Auction Event;

**5.1.2.** the Seller shall ensure that RB Group and its employees and subcontractors are provided with access to each Sale Site as RB Group deems necessary for preparation and conduct of the Live Auction Event;

**5.1.3.** the Seller shall ensure that prospective bidders are provided with access to enter and use the Sale Site to inspect the Equipment in advance of the Live Auction Event;

**5.1.4.** the Seller shall ensure that Buyers are provided with access to enter and use the Sale Site to pick up Equipment after the Live Auction Event;

**5.1.5.** the Seller shall ensure that property damage and public liability insurance is maintained in full force and effect as required to cover third party personal injury, death or property damage claims. The Seller will ensure that RB Group is named as additional insured and, upon request, RB Group will be provided with a copy of the insurance certificate, or other documentation evidencing RB Group as an additional insured, to the satisfaction of RB Group; and

**5.1.6.** the Seller shall be responsible for loss or damage to the Equipment, other than loss or damage arising as a result of the negligence of RB Group, its agents or employees, until the earliest of: (a) the removal of the Equipment from the Sale Site by the Buyer; or (b) receipt by the Seller of all proceeds from the sale of the Equipment.

**5.2. Indemnity.** Except with respect to matters relating to RB Group's gross negligence, bad faith or fraud, the Seller shall defend, indemnify and save RB Group, its parents, subsidiaries and affiliates, and each of their officers, directors, shareholders, employees, and agents, harmless against any and all claims, demands, suits, actions, causes of action, damages, costs or charges whatsoever arising from any injury, loss, or damage to any third party, including personal injury, arising out of the third party's use of the Sale Site.

**6. Jurisdiction Specific Clauses**. The following jurisdiction-specific additional terms and conditions will apply for Sellers selling assets in a Live Auction Event in the country noted:

| **North America** |
| --- |
| **United States of America**<br>1. Should RB Group be required to purchase titles on the Seller's behalf, RB Group shall be entitled to interest on amounts advanced at a rate of US Bank prime plus 2%.<br>2. Except for California, a document administration fee of $115 will be charged for each item of Equipment requiring title or registration documents. In California, a document administration fee of $70 will be charged for each item of Equipment requiring title or registration documents.<br>3. Within the state of Texas RB Group auctions are regulated by the Texas Department of Licensing and Regulation. Contact information: P.O. Box 12157, Austin, TX, 78711, 512-463-6599, www.tdlr.texas.gov. |

4. For certain Live Auction Events, RB Group uses the payment processing services of Stripe Inc. and its affiliates (“**Stripe**”). By agreeing to this Sales Agreement, Seller agrees that the terms of the Stripe Recipient Agreement (https://stripe.com/en-ca/legal/connect-account/recipient), apply between it and Stripe, and establish that Stripe is not a party to this Sales Agreement, nor is it responsible to the Seller directly for payment processing services in any manner whatsoever. Seller acknowledges that as a condition of RB Group making payments under Section B. 1.2, Seller must provide accurate and complete information about Seller and Seller’s business for purposes of identity verification and payment processing, and Seller hereby authorizes RB Group to share it and transaction information related to Seller’s payouts with Stripe. RB Group may suspend payments to Seller where it is satisfied, acting reasonably, that it has not received accurate or complete information from the Seller. RB Group is not responsible for any delays in payment due to Seller’s failure to provide such information as required to meet RB Group or Stripe’s regulatory requirements. In the event Stripe is legally obligated to provide Seller with certain notices or forms, such as tax invoices, RB Group is hereby authorized to receive on Seller’s behalf from Stripe and delivery to RB Group will satisfy Stripe’s obligation to do so. RB Group will forward such notices or forms to the Seller within a reasonable time of receipt.

**C. TERMS AND CONDITIONS APPLICABLE TO ONLY ONLINE MARKETPLACES**

Unless otherwise noted in your Agreement, the below terms and conditions will apply to all sales of equipment through a Marketplace. All references to "Equipment" in this Section C shall refer to equipment that the Seller is listing for sale through a Marketplace.

**1. RB Group’s Services**

**1.1. Services of RB Group**. Under the terms of this Agreement, RB Group offers you the use of the applicable Marketplace, which functions as a platform on which you can list and advertise Equipment for sale to potential buyers. Each party is acting on its own behalf, and RB Group is not a party to the subsequent binding obligation to sell/buy the Equipment that is entered into between you and the Buyer. Nor does RB Group represent either party in the transaction that results from use of the Marketplaces. In consideration of your use of the Marketplace for the listing and advertising of Equipment for sale, fees as listed in Section D are payable by you.

**1.2. Listing Formats**. There are five listing formats available on the Marketplace:

**1.2.1. Weekly Featured Auctions**. A format where you are able to list and advertise Equipment for sale to the highest bidder who meets or exceeds the opening bid.

**1.2.2. Buy Now**. A format where you are able to list and advertise Equipment at a Buy Now Price.

**1.2.3. Make Offer**. A format where you are able to list and advertise Equipment for sale to a bidder at the Asking Price or a Negotiated Price. This format may be combined with the Buy Now option.

**1.2.4. Marketplace Direct**. A format where you are able to self-list, advertise and manage the sale of business and surplus assets.

**1.2.5. Reserve**. A format where you are able to list and advertise Equipment for sale to the highest bidder in a reserved marketplace, where you set the Reserve Price. This format may be combined with the Buy Now option.

**1.3. Exclusivity/Commitment to Sell**. The Marketplace shall be the exclusive listing site for Equipment and you shall not offer for sale or sell the Equipment in any other manner until the earlier of (a) the date such Equipment is sold via the Marketplace or (b) the date you withdraw the Equipment from the Marketplace as permitted herein. By entering into this Agreement for use of the Marketplace, you hereby extend an irrevocable offer to sell the Equipment, as applicable, (a) to a Buyer who is the highest bidder and who meets or exceeds the opening bid, the Reserve Price, or Asking Price, as applicable (b) to a Buyer who commits to purchase Equipment at the Buy Now Price; or (c) to a Buyer who commits to purchase Equipment at the Negotiated Price. If you are in breach of this Section 1.3, you will be subject to the Seller Default Fee.

**1.4. Opening Bid and Scheduling**. For Online Auctions, RB Group will set the opening bid for the Equipment and schedule the listing opening times. For Buy Now and Make Offer listings, RB Group will schedule the listing opening times and set the opening bid, if applicable; you will have the option of setting a buy now price ("**Buy Now Price**") or an asking Price ("**Asking Price**"), not to exceed 120% of estimated market value as determined by RB Group. You may lower the Asking Price during a listing period, but you may not add an Asking Price after the opening time. If you have selected to list the Equipment by Reserve, you will have the option of setting a reserve price, not to exceed 120% of estimated market value as determined by RB Group ("**Reserve Price**"). RB Group will determine the period of time that the Reserve listing is published to the website and is available for Buyers to submit bids (the "**Reserve Period**"). If, at the end of the Reserve Period, the Reserve Price has been met, the highest bid received from a Buyer will be automatically accepted. If the Reserve Price is not met during the Reserve Period, RB Group may elect to re-list the Equipment. All Buy Now and Make Offer listings will be scheduled to run for up to 90 consecutive days, at the discretion of RB Group. The listing period may be extended at RB Group's sole discretion. In the event the Equipment remains unsold, whether on a Buy Now, Make Offer or Reserve listing, after 90 days, (a) the Equipment must be re-inspected and will incur a Re-Inspection Fee and you agree to reduce the Asking Price or Reserve Price, as applicable, by 20% to continue the listing; or (b) you may elect, without penalty, to remove the listing.

**1.5. Additional Options**. For Make Offer listings and Reserve listings where the Reserve Price is not met, you have the option to (a) accept bids lower than the Asking Price or Reserve Price, as applicable; (b) counter bids lower than the Asking Price or Reserve Price, as applicable, with a higher offer ("**Counter Offer**"); or (c) reject bids lower than the Asking Price or Reserve Price, as applicable, at any time during a listing. Counter Offers are valid for up to two business days. However, only one Counter Offer can be valid at any time; the last Counter Offer you issue supersedes and invalidates any previous Counter Offers. Upon acceptance of the Counter Offer by the Buyer, the listing is closed and you are legally bound to complete the transaction.

**1.6. Conclusion of Purchase; Bill of Sale**. After the winning bid for a piece of Equipment has been established by RB Group or the Buyer has committed to purchase the Equipment at the Buy Now Price or the Asking Price, the bid or purchase commitment of Buyer will be automatically accepted by you and a binding obligation to purchase and sell between you and Buyer is automatically created ("**Binding Obligation**"). All applicable terms and conditions of this Agreement shall apply to the Binding Obligation. Further, for Make Offer listings, you may accept or counter an offer below the Asking Price. In the event that you accept an offer or the Buyer accepts your Counter Offer (the "**Negotiated Price**"), a Binding Obligation is created and all terms herein shall apply. Buyer and Seller will be notified of such Binding Obligation by an email or other notification that is generated automatically by the Marketplace. Subject to RB Group’s receipt of payment for the

Equipment, you, at your own expense, shall deliver a bill of sale, if applicable, and such other documentation as may be reasonably necessary to transfer title to the Equipment to Buyer. Unless otherwise agreed, the Equipment listing will only show your RB Group "Seller ID", but not your formal identity, business name and/or address details. This information will only be provided to Buyer at the time a Binding Obligation is reached.

**1.7. No Guarantee on Proceeds.** There is no guarantee as to the gross proceeds that may be realized from a listing on the Marketplace.

**1.8. Equipment Availability**. Subject to RB Group's receipt of full payment and Buyer's completion of any additional, required documents, you and the Buyer will be notified that the Equipment is available for pick-up via an email that is generated automatically by the Marketplace ("**Item Release**"). You agree to have the Equipment available for transportation, complete with ignition key, if applicable, to the Buyer no later than one business day after a Binding Obligation is created. If the Equipment is not available, you will be subject to pay a Post-Closing Delay Fee. Further, if you fail for any reason to release the Equipment to the Buyer after a Binding Obligation is created, you will be subject to a Seller Default Fee in addition to any other rights or remedies that RB Group or Buyer may have.

**2. Equipment Listings**. You may not list goods that are illegal to use or possess under any applicable law, rule or regulation. RB Group reserves the right, in its sole discretion, to (a) refuse to list any piece of Equipment at any time; (b) withdraw any Equipment listing from the Marketplace; (c) review and verify a listing's information and description; or (d) cancel any transaction that it deems to be suspicious or fraudulent and report it to applicable authorities. The information you provide during the Equipment listing process, combined with the Inspection Report, constitute the listing details for the Equipment (the "**Listing Details**"). You agree to fully, completely and accurately disclose to RB Group all information relating to the Equipment of which you are aware. Any information (including brand name or other indication of origin or manufacture) that you provide related to the Equipment must be complete and accurate, and you shall be responsible for any inaccuracies, errors or omissions. Equipment listings on the Marketplace may not include links to or a description of other items that you may have for sale outside of the Marketplace.

**3. Inspections; Restrictions on Use**

**3.1. Equipment Inspections**. For all requested inspections, you agree to permit RB Group and/or its authorized representatives to test and inspect each piece of Equipment at a time and place specified in the Sales Agreement or as otherwise mutually agreed. RB Group shall produce an inspection report ("**Inspection Report**") for each piece of Equipment inspected by RB Group. RB Group inspections are solely for the purpose of reporting on the visible condition of the Equipment's major systems and attachments. RB Group inspections are NOT intended to detect latent or hidden defects or conditions that could only be found in connection with the physical dismantling of the Equipment or the use of diagnostic equipment or techniques. Your failure to properly maintain the Equipment from the date of inspection until its removal from your location by Buyer will void the inspection. If you alter or perform repairs or other maintenance to the Equipment after the inspection, another inspection will be required, and you will be subject to a Re-inspection Fee.

**3.2. Ownership of Inspection Report**. The Inspection Report is the sole and exclusive property of RB Group. Except as expressly stated, nothing in this Agreement shall be deemed to grant to any other party, by implication, estoppel or otherwise, license rights, ownership rights or any other intellectual property rights in the Inspection Report. You cannot use the Inspection Report for any other purpose without the prior written approval from RB Group.

**3.3. Restrictions on Use of Equipment**. From the time you provide listing details to RB Group or an inspection is performed by RB Group until the Equipment is removed from its location by or on behalf of Buyer following creation of a Binding Obligation, you may not operate, lease, rent, modify or alter the Equipment. In addition to any other rights and remedies that RB Group may have, a breach of this provision prior to the creation of a Binding Obligation for the Equipment may result in either of the following: (a) RB Group may remove the Equipment from the Marketplace and charge you a Removal Charge; or (b) RB Group may continue with the listing in which case if the Equipment was inspected previously by RB Group, you must have the Equipment re-inspected and pay RB Group a Re-Inspection Fee. If the Equipment was not inspected, you must supply updated Listing Details to RB Group and pay RB Group an additional Listing Fee. In the event of a breach of this provision is determined by RB Group in its reasonable discretion and the Equipment has been sold through the Marketplace, the transaction is subject to cancellation and you will be charged a Seller Default Fee in addition to reimbursement of transportation and other costs incurred by Buyer.

**4. Disclosure and Payment of Liens**. You are responsible for making full disclosure to potential buyers of all Encumbrances and third-party interests that may exist on or pertain to your Equipment. You will at your own cost and expense warrant and defend title to the Equipment on behalf of the Buyer, its successors and assigns, against the claims and demands of all persons. If required, you shall be responsible for the payment of any independent equipment appraisals and documentation fees required to release such liens. You acknowledge and agree, and hereby authorize, that RB Group may, in its discretion, discharge creditor claims or pay for such appraisals and documentation fees and deduct the amount from the proceeds due to you.

**5. Payment**

**5.1. Payment of Proceeds**. Once a Binding Obligation is created between you and Buyer, RB Group will generate a third-party invoice that is issued to Buyer on your behalf. Where VAT is applicable, once a Binding Obligation is created between you and Buyer, then upon instruction of RB Group, you shall either: (a) raise a VAT compliant invoice directed to RB Group in which case Seller is making a deemed supply of goods to RB Group for VAT purposes; or (b) raise a VAT compliant invoice directed to the Buyer which invoice shall be made available to RB Group prior to delivery to the Buyer. Buyer is responsible for paying you the purchase price for the Equipment upon creation of a Binding Obligation, and you hereby instruct RB Group to facilitate receipt of the purchase price. Further, you hereby grant RB Group the right, in its own name, to enforce your right to payment. You agree that no monies shall be payable to you until paid by the Buyer. Once received by RB Group, any monies due to you, net of any commissions and fees due RB Group as detailed in this Agreement, shall be disbursed within 21 days after creation of a Binding Obligation and , where applicable, receipt of a VAT compliant invoice. You hereby consent to RB Group's right to offset any other commissions and fees specified in this Agreement or that result from additional services requested by you, with any remainder to be paid within 21 days following receipt of an invoice. You acknowledge that Buyers may fail to perform or pay on a timely basis and that RB Group shall not have any liability to you for any act or omission of Buyers.

**5.2. Taxes**. You shall be responsible for the payment of any tax or duty that is your responsibility as a seller of the Equipment. RB Group shall collect and remit state and local sales tax arising upon the sale of the Equipment on the Marketplace. All commissions, fees and other amounts payable to RB Group arising pursuant to this Agreement are deemed to be exclusive of any VAT (if applicable). Where prompted on becoming

a user of the Marketplace, you are required to enter your VAT registration number, and you shall immediately notify RB Group if that number ceases to be valid for any reason. You shall indemnify RB Group and its affiliates, officers, directors, agents and employees against any tax, cost or expense relating to your and/or Buyer's failure to satisfy any VAT chargeable in relation to a Binding Obligation. For the purposes of these Terms, "VAT" means value added tax as provided for in the EU VAT Directive 2006/112/EEC, the Federal Decree-Law No. 8 of 2017 for UAE or similar tax in countries outside the EU or the UAE respectively.

**5.3.** **Title Transfer Fees; Lien Search Fees**. For each unit of Equipment, unless otherwise specified, you will pay lien search fees, document administration fees and any other fee applicable as set out in RB Group's standard Fee Schedule detailed in Section D. Document administration fees will cover fees associated with title or registration documents.

**6.** **Your Options After Buyer Default**. If the Buyer fails to pay in accordance with the Binding Obligation, the Buyer is considered to be in default. In the event of a Buyer default, you may at your own risk and account rescind the offer to sell to the Buyer after which you may elect any one of the following options:

**6.1.** **Offer Equipment to Second Highest Bidder**. If there was more than one bidder for the defaulted Equipment, you may elect to offer the Equipment to the second highest bidder. If the second highest bidder accepts, a Binding Obligation for the Equipment will be concluded by the Marketplace, and you will receive proceeds based on that second bidder's highest bid, less any applicable commissions and fees payable to RB Group;

**6.2.** **Re-list the Equipment**. Unless you elect to withdraw the Equipment pursuant to Section C.6.3 below, RB Group will automatically relist the Equipment in a subsequent online listing within 30 days of the Buyer default. In such case, you will not be charged any additional Listing Fee for such re-listing (unless determined pursuant to Section C.1.4 above) and these Terms continue to apply; or

**6.3.** **Withdraw the Equipment**. You may elect, without penalty, to withdraw the Equipment from listing on the Marketplace.

**7.** **Legal Disputes**

**7.1.** **DISCLAIMER; LIMITATION OF LIABILITY**. TO THE FULLEST EXTENT PERMITTED BY LAW, THE MARKETPLACE PROVIDED BY OR THROUGH RB GROUP IS PROVIDED ON AN "AS IS" AND "AS AVAILABLE" BASIS WITHOUT WARRANTIES OF ANY KIND, WHETHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, IMPLIED WARRANTIES OF NON-INFRINGEMENT, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. TO THE FULLEST EXTENT PERMITTED BY LAW, IN NO EVENT SHALL RB GROUP BE LIABLE FOR ANY SPECIAL, INDIRECT, PUNITIVE, COVER, INCIDENTAL OR CONSEQUENTIAL DAMAGES, HOWEVER CAUSED, WHETHER IN CONTRACT OR TORT OR UNDER ANY OTHER THEORY OF LIABILITY, INCLUDING LOSS OF REVENUE, PROFITS, OR BUSINESS, ANY LOSS OF GOODWILL OR REPUTATION, OR THE COSTS OF SUBSTITUTE GOODS OR SERVICES, EVEN IF RB GROUP OR AN AUTHORIZED REPRESENTATIVE THEREOF HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

**7.2.** **English Controlling Language.** All performance under this Agreement and the resolution of disputes shall be conducted in the English language. If a translation of this Agreement into any other language is required by law, the English version will prevail to the extent that there is any conflict or discrepancy between the English version and any translation. If this Agreement is provided to you in a language other than English, RB Group does so solely for your convenience.

**8.** **Storage at RB Group Yard for a Marketplace transaction**

**8.1.** The provisions in this section 8 apply to Equipment listed on a Marketplace and stored at a RB Group site (each, a "**Facility**").

**8.2.** The Seller and RB Group agree that the storage of Equipment does not represent a consignment agreement or other arrangement under which RB Group agrees to offer the Equipment for sale on behalf of the Seller.

**8.3.** The Seller shall be responsible for the delivery and safe transportation of the Equipment to the Facility by a reputable transportation company.

**8.4.** RB Group agrees to provide storage provided that the Equipment is free of all contents and substances other than normal operating fluids and lubricants. RB Group reserves the right to refuse storage of any Equipment containing any hazardous substances or visibly leaking contaminants.

**8.5.** If the Equipment is stored at a Facility while listed on a Marketplace, the Seller shall be responsible for loss or damage to the Equipment, other than that arising from the negligence or misconduct of RB Group, its agents or employees, during the period the Equipment is being stored at the Facility. In the event RB Group removes the Equipment pursuant to Section C. 9 of this Agreement, RB Group will not be responsible in any manner whatsoever for loss or damage to the Equipment after its removal. The Seller shall insure the Equipment to its fair market value against all perils, with RB Group as an additional insured and loss payee to the extent of any outstanding amount due and owing under this Agreement.

**8.6.** Except with respect to matters related to RB Group's gross negligence, bad faith or fraud, the Seller shall defend, indemnify and save harmless RB Group from any and all liabilities, damages, costs (including reasonable attorney's fees), claims, suits or actions arising out of any contravention of applicable laws (including, but not limited to, environmental laws), property damage or injury to a person or persons, including death resulting at any time therefrom, arising out of: (a) the attendance of the Seller's employees, agents, subcontractors or potential buyers at the Facility; (b) the inspection or use of any Equipment by the Seller's employees, agents, or subcontractors; (c) the spill or release, unintentional or otherwise, of any toxic, dangerous or hazardous chemicals, materials, substances, pollutants or wastes, or any other form of environmental contaminants; and (d) failure to comply with environmental laws, regulations, bylaws, standards, policies, or other requirements relating to pollution or protection of human health and safety and the environment.

**8.7.** Storage fees shall be waived for the term of the Agreement.

**8.8.** For greater clarity, if Equipment is stored at the Facility while listed on a Marketplace, the Seller shall contract with the applicable Live Auction contracting entity listed in Section A. 1 of these Terms for the storage component and contract with the applicable Marketplace contracting entity listed in Section A. 1. of these Terms for the Marketplace listing.

**9.** In the event that any Equipment remains in the Facility for a period greater than the term of the Agreement, RB Group shall be entitled to demand in writing that the Seller remove such Equipment from the Facility within 15 days after the Seller receives such written demand. If the Seller has not removed the Equipment prior to the expiry of such 15-day notice period, RB Group may, in addition to any other rights available to it at law or equity, take such actions as it deems necessary to remove the Equipment from the Facility and will notify the Seller of the Equipment's relocation. The Seller will, in addition to other amounts due and owing under this Agreement, be responsible for any amounts owing to a third party in respect of the relocation and storage of the Equipment and reimburse RB Group for all costs incurred in connection with RB Group's removal of the Equipment. Such costs will be payable in full 15 days from the receipt of invoice.

**D. GENERAL FEES FOR EQUIPMENT**

| TERM | DESCRIPTION |
|---|---|
| **Lien Search Fee** | Canada, the United States of America: 70.00 per piece of Equipment<br>Mexico: 25.00 per seller<br>Australia, New Zealand: 100.00 per seller, plus 25.00 per piece of Equipment<br>The United Kingdom, Republic of Ireland: 65:00 per Seller<br>France: 30.00 per VAT number search<br>Unless otherwise stated in the Sales Agreement, for all other regions no Lien Search Fee will apply. |
| **Title Transfer Fee Document Administration Fee for Schedule B Equipment** | 115.00, except in Australia or New Zealand, in either case the fees noted above shall apply |
| **Title Transfer Fee Document Administration Fee for Schedule A Equipment** | See jurisdiction specific clauses set out in Section B. 6. |
| **Removal Charge for Schedule B Equipment** | Listing Fee plus 15% of the greatest of (a) the estimated market value as determined by RB Group; (b) the opening bid or buy now price (as set by RB Group); (c) the Asking Price; or (d) the highest bid submitted on the Equipment to the Marketplace. Except, in the event that the Asking Price was met, the commission fee of the final selling price as if the Equipment were sold shall be due. |
| **Re-inspection Fee for Schedule B Equipment** | 295.00<br>RB Group reserves the right to determine the exact amount of the Re-Inspection Fee for any Equipment requiring re-inspection in its sole discretion on a case-by-case basis. |
| **Buyback Charge** | 15% of the Equipment's closing price for any involved transaction(s). |
| **Post-Closing Delay Charge for Schedule B Equipment** | Charges include, but are not limited to, transportation cancellation or re-scheduling fees, transportation delay fees, hourly or daily average rental cost of equivalent replacement equipment for the Buyer, including loading, unloading and transportation costs. RB Group may assess the Post-Closing Delay Charge at its discretion. |
| **Seller Default Fee** | 15% of the winning closing price, plus the Listing Fee and any costs incurred by Buyer and validated by RB Group. If a winning closing price is not available, it will be [25]% of the estimated fair market value of the Equipment, as determined by RB Group. |
| **Logistics Fee-Repair Estimate** | Minimum 75.00 |
| **Transport Fee** | Transport Cost + 10% |
| **Refurbishment/Make-Ready Fee** | Cost + 10% |
| **Duplicate Title Service** | 200.00 + gov. fees |
| **Manufacturer's Statement of Origin (MSO) & Titling Document Service (applicable in the USA only)** | 200.00 + gov. & man. fees |
| **VIN Tag / Manufacturer's Label Service** | 300.00 + man. fees |
| **Title Transfer Service** | 200.00 + gov. fees |
| **Corrected Title Service** | 200.00 + gov. fees |