# <u>Exhibit B</u>

## Engagement Agreement

50 Fountain Plaza,
Suite 500
Buffalo, New York 14202

www.nmrk.com

## EXCLUSIVE RIGHT AGREEMENT

This **AGREEMENT** is made the __ day of July, 2025, by and between Alfred T. Giuliano, not individually but solely in his capacity as Chapter 7 Trustee ("**Seller**") for the estates of Jack Cooper Transport Company, LLC, et al, jointly administered as case no. 25-10416 (collectively, the "**Jack Cooper Estates**") on the one hand, and Newmark Real Estate of Ohio, LLC ("**Newmark Ohio**"), Apartment Realty Advisors/Central States, Inc. ("**Central States**"), Ciminelli Real Estate Corporation, d/b/a Newmark Ciminelli ("**Newmark Ciminelli**"), Newmark of Connecticut, LLC ("**Newmark Connecticut**"), and Newmark Southern Region, LLC ("**Newmark Southern**"), on the other hand (collectively Newmark Southern, Newmark Ohio, Central States, Newmark Ciminelli, and Newmark Connecticut are referred to herein as the "**Broker**").

**W I T N E S S E T H**

**WHEREAS**, on March 8, 2025, the Debtors filed petitions under chapter 7 of the Bankruptcy Code in the U.S. Bankruptcy Court for the District of Delaware (the "**Court**"), thereby commencing Lead Case No. 25-10416 (Jointly Administered) (the "**Bankruptcy Cases**");

**WHEREAS**, Seller is the duly appointed chapter 7 trustee of the Jack Cooper Estates;

**WHEREAS,** the Jack Cooper Estates are the owners of certain real estate known as and located at 85 Ransier Drive, West Seneca, New York (the "**Ransier Property**"), as well as certain other real estate holdings (the "**Additional Real Properties**") located at 239 Triport Road, Georgetown, Kentucky (building and land), 6301 Grove Street, Liberty, Missouri (land adjacent to Claycomo terminal), 35 Cold Springs Road., Suite 511, Rocky Hill, Connecticut (building and land), and 630 Kennesaw Due West Road NW, Kennesaw, Georgia (building and land);

**WHEREAS,** Newmark Ohio, Central States, Newmark Connecticut, and Newmark Southern are real estate brokers affiliated with each other under common ownership, and Newmark Ciminelli is a real estate broker licensing the Newmark name;

**WHEREAS**, at least one of the Broker entities is duly licensed to sell real estate in each of the jurisdictions where the Ransier Property and the Additional Real Properties are located (i.e., Newmark Ciminelli is a duly licensed real estate broker in the State of New York, Newmark Ohio is a duly licensed real estate broker in the Commonwealth of Kentucky, Central States is a duly licensed real estate broker in the State of Missouri, Newmark Connecticut is a duly licensed real estate broker in the State of Connecticut, and Newmark Southern is a duly licensed real estate broker in the State of Georgia);

**WHEREAS,** Seller desires to grant Broker the sole and exclusive right as agent for Seller to negotiate for and to procure the Sale (as hereinafter defined) of all or portions of the Ransier Property;

**WHEREAS**, Seller is currently evaluating whether and how to market for sale the Additional Real Properties;

**WHEREAS**, Seller desires the option, but not the obligation, to grant Broker the sole and exclusive right to negotiate for and procure the Sale of such of the Additional Real Properties as Seller determines in his absolute and sole discretion; and

**WHEREAS**, Broker desires to accept such rights subject to and conditioned upon the terms and provisions contained herein;

**NOW, THEREFORE**, in consideration of mutual covenants herein contained, Seller and Broker agree as follows:

1. **APPOINTMENT OF BROKER**: Seller hereby grants Broker the exclusive right to negotiate for and to procure the Sale of all or any portion of the Designated Properties (as defined herein) on the terms and conditions as may be agreed upon by Seller and the purchaser or investor (each, a "**Prospect**"). For the

purposes of this Agreement, "**Designated Properties**" means (a) the Ransier Property and (b) such of the Additional Real Properties which Seller, in his absolute and sole discretion, identifies and designates in writing (email is sufficient) to the Broker for representation as agent. For the purposes of this Agreement, "**Sale**" means, in addition to the conventional transfer of a fee simple interest, any sale/lease-back, "1031" tax-deferred exchange or "swap", joint venture, equity investment or any other sale, transfer or disposition of all or any part of the Designated Properties by which any portion of Seller's interest in the Designated Properties is transferred. For the purposes of this Agreement, "**Prospect**" means the original Prospect described herein and any parent, subsidiary, division, affiliate of such Prospect or any assignee, designee, nominee, or successor thereof. Seller acknowledges that Broker shall not be responsible for providing any legal, tax or any other professional advice or services in connection with its appointment hereunder.

2. **TERM**: This Agreement shall commence on the date it is both fully executed and approved by the Bankruptcy Court (the "**Commencement Date**") and shall continue until the earlier of (a) the date on which either party terminates this Agreement upon thirty (30) days prior written notice, sent to the other party by certified mail, return receipt requested, but sent no earlier than the date that is six (6) months after the Commencement Date (such six (6) month period, the "**Initial Period**"), or (b) the date that is twenty-four (24) months after the Commencement Date (the date that this Agreement shall expire or shall earlier be terminated shall be referred to as the "**Termination Date**"). It is hereby acknowledged and understood that once Seller is terminated and discharged by the Court, Seller shall have no further obligation to Broker for any commissions, fees, or other similar compensation in connection with any contract of sale that is fully executed thereafter and all obligations under this Agreement shall be extinguished.

3. **BROKER'S AND SELLER'S DUTIES**:

a. Broker agrees, during the term of the Agreement, to use commercially reasonable efforts to bring about a Sale of all or any portion of the Designated Properties, which efforts shall include the following:

   i. developing offers or inquiries;
   ii. canvassing, soliciting, marketing and otherwise utilizing its services to bring about a Sale of all or any portion of the Designated Properties;
   iii. providing information to and facilitating onsite evaluation by any and all interested parties;
   iv. communicating with Seller on a regular basis about such offers or inquiries and the status of any negotiations for a Sale of all or any portion of the Designated Properties;
   v. providing a competent team of brokers and salespersons associated with or employed by Broker, which shall include David Dolan (collectively, the "**Marketing Team**"); and
   vi. conducting all negotiations, subject to the review and final approval of Seller.

b. Seller agrees, during the term of this Agreement, to:

   i. refer to Broker without delay all offers, communications, and/or inquiries from potential Prospects and/or Outside Brokers (as hereinafter defined) with respect to a Sale of all or any portion of the Designated Properties;
   ii. furnish Broker with available surveys, site plans, or any other related plans;
   iii. permit Broker to install appropriate signage at the Designated Properties, identifying Broker as the exclusive broker for Seller, in such locations as Broker deems most effective;
   iv. cooperate with Broker to bring about a Sale, including meeting with potential Prospects and/or their respective Outside Brokers; and
   v. disclose to the Broker the time, date, and place of any closing.

4. **OUTSIDE BROKER**: Broker is hereby authorized by Seller to cooperate with other real estate brokers licensed by the applicable licensing bodies where the Designated Properties are located representing potential Prospects (each, an "**Outside Broker**"). For the purposes of this Agreement, the term "Outside Broker" includes salespersons and brokers employed by or associated with Broker who are not members of the Marketing Team.

NEWMARK

5. **ADVERTISING**: Broker shall pay the cost of any and all advertising, promotional material, messenger, and mailing expenses incurred by Broker, in Broker's sole discretion, in connection with Broker's appointment hereunder.

6. **COMPENSATION**:

a. Broker (i.e., Newmark Ciminelli, Newmark Ohio, Central States, Newmark Connecticut, and/or Newmark Southern, as applicable) shall be entitled to a commission on the happening of any one of the following events:

i. a contract of Sale for all or any portion of the Designated Properties is fully executed by Seller and a Prospect during the term of this Agreement and, after entry by the Bankruptcy Court of a Sale Order (as hereinafter defined) authorizing such Sale, such Sale subsequently closes and is fully consummated with payment to Seller; or

ii. a contract of Sale for all or any portion of the Designated Properties is fully executed by Seller and a Prospect on the Pending List (as hereinafter defined) during the Pending Period (as hereinafter defined) and, after entry by the Bankruptcy Court of a Sale Order authorizing such Sale, such Sale subsequently closes and is fully consummated with payment to Seller.

b. In the event of a Sale of all or any portion of the Designated Properties in accordance with Section 6(a), Seller shall pay and Broker (i.e., Newmark Ciminelli, Newmark Ohio, Central States, Newmark Connecticut, and/or Newmark Southern, as applicable) shall earn and hereby agrees to accept a commission in an amount equal to Six Percent (6.00%) of the Purchase Price. Seller shall pay Broker (i.e., Newmark Ciminelli, Newmark Ohio, Central States, Newmark Connecticut, and/or Newmark Southern, as applicable) the commission payable from the sale proceeds in full in wired, certified, or bank funds from escrow or attorney-trust upon the closing of the Sale of such applicable Designated Property. In the event that an Outside Broker is a procuring cause of such Sale, Broker shall compensate the Outside Broker out of the commission received hereunder pursuant to a separate agreement between Broker and such Outside Broker. For the purposes of this Agreement, "**Purchase Price**" means the Sale price set forth in the contract of Sale executed by the parties thereto, as may be amended or modified by the parties thereto from time to time, without any deduction or setoff for the customary and usual adjustments between sellers and Prospects at closing of title.

c. Notwithstanding anything in this Agreement to the contrary, in connection with a Sale of the Ransier Property to Burnham Industrial Partners ("**Burnham**"), Broker shall only be entitled to a reduced commission in an amount equal to Four Percent (4.00%) of the Purchase Price. Seller shall pay Broker the reduced commission in full in wired, certified, or bank funds from escrow or attorney-trust upon the closing of the Sale of the Ransier Property to Burnham. In all events, upon Broker's reasonable request, Seller shall provide Broker with a status update of any negotiations with the Burnham.

d. Seller shall have the unqualified right, in its sole and absolute discretion, to refuse to enter into any contract of Sale with any prospective Prospect for any reason whatsoever without incurring any obligation to Broker for the payment of commission(s), fee(s), or other similar compensation hereunder in connection with such contract of Sale and any negotiations related thereto.

e. Notwithstanding anything herein to the contrary, (i) Broker shall only be entitled to a commission upon the closing of a sale of all or any portion of the Designated Properties approved by an order of Bankruptcy Court that authorizes such closing and the payment of the commission to Seller's Broker (the "**Sale Order**") and (ii) in the event that any good faith deposits or earnest money deposits are forfeited by a potential buyer, such funds shall solely belong to the Jack Cooper Estates, and no commission to the Broker is payable or owing from such funds. Seller will seek to obtain Bankruptcy Court approval in a reasonably expeditious manner following Seller's approval

of the terms, in his sole discretion, of a written offer to purchase all of any portion of the Designated Properties.

7. **PENDING NEGOTIATIONS**: Within thirty (30) days after the Termination Date, Broker shall deliver to Seller a complete list of potential Prospects who, during the term of this Agreement, were shown all or any portion of the Designated Properties, submitted or received a written proposal or offer in connection with a Sale of all or any portion of the Designated Properties, or entered into negotiations for a Sale of all or any portion of the Designated Properties (collectively, the "**Pending List**"). In the event that a contract of Sale is executed by a potential Prospect on the Pending List within six (6) months after the Termination Date (the "**Pending Period**") and, after entry of a Sale Order, such Sale subsequently closes, Seller shall recognize Broker as its exclusive broker and shall pay to Broker a commission in accordance with the terms set forth above. Notwithstanding the foregoing, if as of the expiration of the Pending Period, negotiations with a potential Prospect listed on the Pending List are active, the Pending Period as to that specific potential Prospect shall be automatically extended until such time as the transaction is either consummated or negotiations permanently cease.

8. **DEFAULT BY SELLER**: In the event that any payment earned, due, and payable hereunder is not paid within ten (10) days after notice of non-payment, Seller agrees to pay all costs of collection, including reasonable attorneys' fees and disbursements. In addition, any amounts owed pursuant to this Agreement and not paid when due shall accrue interest at the rate of one and one-half percent (1.5%) per month, commencing from the due date until paid in full. In the event that Seller voluntarily withdraws the Designated Properties from the market prior to expiration of the Initial Period and a Sale relating thereto is not consummated in accordance with the terms hereof, Broker's sole remedy and recourse under this Agreement shall be reimbursement of its reasonable out-of-pocket expenses.

9. **ENVIRONMENTAL RESPONSIBILITIES AND REPRESENTATIONS:** The parties acknowledge that Broker is not responsible to determine whether toxic or hazardous wastes or substances or other undesirable materials are present at the Designated Properties. Broker shall have no responsibility or liability in connection with information of hazardous materials existing therein, including but not limited to: lead-based paint, asbestos and above or belowground storage tanks provided to it by Seller.

10. **MISCELLANEOUS**:

a. For the avoidance of doubt, the sole source of compensation or other recourse for Broker under the terms of this Agreement will be funds of the Jack Cooper Estates.

b. For the avoidance of doubt, the terms of this Agreement do not apply to any of the Additional Real Properties which do not become Designated Properties pursuant to Section 1 of this Agreement, and the compensation provisions in Section 6 shall not apply to the Sale of any such Additional Real Properties.

c. This Agreement shall only become effective upon entry of an order by the Bankruptcy Court approving the Agreement pursuant to section 327 of the Bankruptcy Code.

d. The parties acknowledge that the signatories are vested with the authority to execute this Agreement on behalf of their respective parties.

e. Seller shall provide Broker with a copy of the fully executed contract(s) of Sale upon Broker's request.

f. This Agreement (i) contains the entire understanding of the parties hereto with respect to the subject matter hereof; (ii) may not be changed or modified orally but only by written instrument signed by the parties hereto; (iii) shall be binding upon and inure to the benefit of the successors and assigns of the respective parties; and (iv) may not be strictly construed against either Seller or Broker, each party agreeing that it has participated fully and equally in the preparation of this Agreement.

g. The terms of this Agreement shall be governed by the laws of the State of Delaware without giving effect to choice of law principles and any legal action or proceeding related to this Agreement or the services performed or to be performed pursuant hereto shall be brought in the Bankruptcy Court. In the event that the Bankruptcy Court or (in the event that the reference is withdrawn) the District Court for the District of Delaware declines jurisdiction over such dispute or claim, such dispute or claim shall be brought in any appropriate court in New Castle County in the State of Delaware.

h. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of which together shall constitute a fully executed agreement, with the same effect and validity as a single, original agreement signed by all of the parties. To facilitate execution of this Agreement by the parties, facsimile, electronic, and PDF signatures shall have the same validity and effect as original signatures.

*[signature page follows]*

**IN WITNESS WHEREOF**, the parties have hereunto set their hands and seals as of the day and year first above written.

______________________________
Alfred T. Giuliano, as Chapter 7 Trustee

Newmark Real Estate of Ohio, LLC

BY: [signature]
Name: Si Pitstick
Title: Executive Managing Director

Apartment Realty Advisors/Central States, Inc.

BY: ____________________
Name: ____________________
Title: ____________________

Ciminelli Real Estate Corporation,
d/b/a Newmark Ciminelli

BY: ____________________
Name: ____________________
Title: ____________________

Newmark of Connecticut, LLC

BY: ____________________
Name: ____________________
Title: ____________________

Newmark Southern Region, LLC

BY: ____________________
Name: ____________________
Title: ____________________

**IN WITNESS WHEREOF**, the parties have hereunto set their hands and seals as of the day and year first above written.

______________________________
Alfred T. Giuliano, as Chapter 7 Trustee

Newmark Real Estate of Ohio, LLC

BY: ______________________
Name: ______________________
Title: ______________________

Apartment Realty Advisors/Central States, Inc.

BY: [signature]
Name: Tim McKay
Title: Vice Chairman

Ciminelli Real Estate Corporation,
d/b/a Newmark Ciminelli

BY: ______________________
Name: ______________________
Title: ______________________

Newmark of Connecticut, LLC

BY: ______________________
Name: ______________________
Title: ______________________

Newmark Southern Region, LLC

BY: ______________________
Name: ______________________
Title: ______________________

50 Fountain Plaza,
Suite 500
Buffalo, New York 14202

www.nmrk.com

**IN WITNESS WHEREOF**, the parties have hereunto set their hands and seals as of the day and year first above written.

______________________________
Alfred T. Giuliano, as Chapter 7 Trustee

Newmark Real Estate of Ohio, LLC

BY: ______________________________
Name: ______________________________
Title: ______________________________

Apartment Realty Advisors/Central States, Inc.

BY: ______________________________
Name: ______________________________
Title: ______________________________

Ciminelli Real Estate Corporation,
d/b/a Newmark Ciminelli

BY: ______________________________
Name: Timothy Malchow, CCIM
Title: Assistant Vice President

Newmark of Connecticut, LLC

BY: ______________________________
Name: James Ritman
Title: EVP & Managing Director

Newmark Southern Region, LLC

Name: ______________________________
Title: ______________________________

**IN WITNESS WHEREOF**, the parties have hereunto set their hands and seals as of the day and year first above written.

______________________________________
Alfred T. Giuliano, as Chapter 7 Trustee

Newmark Real Estate of Ohio, LLC

BY: ____________________________
Name: ____________________________
Title: ____________________________

Apartment Realty Advisors/Central States, Inc.

BY: ____________________________
Name: ____________________________
Title: ____________________________

Ciminelli Real Estate Corporation,
d/b/a Newmark Ciminelli

BY: ____________________________
Name: ____________________________
Title: ____________________________

Newmark of Connecticut, LLC

BY: ____________________________
Name: James Ritman
Title: EVP & Managing Director

Newmark Southern Region, LLC

BY: ____________________________
Name: ____________________________
Title: ____________________________

**IN WITNESS WHEREOF**, the parties have hereunto set their hands and seals as of the day and year first above written.

______________________________
Alfred T. Giuliano, as Chapter 7 Trustee

Newmark Real Estate of Ohio, LLC

BY: ______________________________
Name: ______________________________
Title: ______________________________

Apartment Realty Advisors/Central States, Inc.

BY: ______________________________
Name: ______________________________
Title: ______________________________

Ciminelli Real Estate Corporation,
d/b/a Newmark Ciminelli

BY: ______________________________
Name: ______________________________
Title: ______________________________

Newmark of Connecticut, LLC

BY: ______________________________
Name: ______________________________
Title: ______________________________

Newmark Southern Region, LLC

BY: [signature] 08/04/2025 | 10:56 AM EDT
Name: Steven Christopher Scott
Title: Executive Vice President - Market Leader