# EXHIBIT A

## PURCHASE AND SALE AGREEMENT

**THIS PURCHASE AND SALE AGREEMENT** (the "**Agreement**"), dated as of June __, 2026, (the "**Effective Date**"), is entered into by and between **ALFRED T. GIULIANO**, not individually but solely in his capacity as the chapter 7 trustee (the "**Trustee**" or "**Seller**") of the bankruptcy estate's (the "**Estate**") of Jack Cooper Transport Company, LLC, a Delaware limited liability company (the "**Debtor**") in cases pending before the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") and jointly administered under Case No. 25-bk-10416 (the "**Bankruptcy Cases**") and **VASCOR Ltd.**, a Delaware company (the "**Buyer**").

## RECITALS

A. On March 8, 2025 (the "**Petition Date**"), the Debtor and certain affiliates thereof commenced the Bankruptcy Cases by filing voluntary bankruptcy petitions under chapter 7 of the Bankruptcy Code in the Bankruptcy Court.

B. On or about the Petition Date, the Office of the United States Trustee appointed Trustee as the chapter 7 trustee to the Estate.

C. Buyer desires to purchase from Seller, and Seller desires to sell to Buyer, the Property (as hereinafter defined) described in Section 1 below for the consideration and upon the terms and conditions set forth in this Agreement. Buyer and Seller intend to effectuate the transactions contemplated by this Agreement through a sale of the Property pursuant to section 363 of the Bankruptcy Code.

**NOW, THEREFORE**, in consideration of the foregoing Recitals, which are hereby incorporated into this Agreement as if specifically set forth therein, and in consideration of the mutual representations, covenants, undertaking and agreements hereinafter contained, Seller and Buyer agree as follows:

## AGREEMENT

1. **Purchase and Sale of Property**. Subject to the terms and conditions of this Agreement, Seller agrees to sell, convey, assign, transfer and deliver to Buyer, and Buyer agrees to purchase, acquire and take from Seller, the Estate's interest in the following property (collectively, the "**Property**"):

(a) The parcels of land commonly known as 239 Triport Road and 241 Triport Road, Georgetown, Scott County, KY, as legally described on Exhibit A attached hereto and made a part hereof (the "**Land**");

(b) All improvements located on the Land, including without limitation, any and all buildings (the "**Buildings**"), structures, facilities, amenities and other improvements constructed or located on or under the Land (the Buildings, together with such other improvements, collectively the "**Improvements**");

(c) The sale of the Property by Seller shall include the Estate's interest in the tangible personal property, inventory, fixtures, trade fixtures, or other furnishings or equipment located on the Property that remains as of the Closing Date (the "**Personal Property**"); and

(d) Any and all of the rights and appurtenances to the Land and Improvements, including all right, title, and interest of the Estate in and to adjacent streets, easements and rights-of-way, if any.

2. **Purchase Price**.

(a) Amount; Payment. The purchase price for the Property shall be One Million Three Hundred Thousand and NO/100 Dollars ($1,300,000.00) (the "**Purchase Price**"), and shall be payable as follows: (i) the Required Deposit (as herein after defined) shall be paid by Buyer into escrow, as provided in Section 3 below, and (ii) the balance of the Purchase Price shall be paid at Closing (as hereinafter defined) by wire transfer in immediately available federal funds in U.S. Dollars.

(b) Proration. The following income and expenses shall be apportioned between Seller and Buyer, as of 11:59 p.m. of the date immediately preceding the Closing, and the parties agree to make the appropriate adjustment payment on the Closing Date (as hereinafter defined), to the extent the same may be applicable: real property taxes and assessments; personal property taxes; rents and other income and expenses of the Property; and any other items which otherwise are customarily apportioned at real estate closings; provided, however, that any conflict between this Section 2(b) including, without limitation, local custom with respect to apportionment costs and expenses, and Section 6(e) or 13(d) shall be resolved in favor of Section 6(e) or 13(d), as applicable. Any adjustments for charges to which this Section 2(b) would apply which would be billed after the Closing Date shall be made based upon the most recent billing received by Seller and shall be subject to re-proration after the Closing and this right shall survive the Closing, subject to Section 2(d).

(c) Meter Reading. Seller will obtain a final reading of the electric, gas, water and other utility meters no earlier than one (1) week prior to the Closing. The Buyer shall not be responsible for any such amounts accruing prior to the Closing, adjusted on a per diem basis for each day prior to the Closing that the meter readings occur. Seller shall retain all rights to all deposits made with any entity that provides or provided utilities to the Property.

(d) Errors in Calculation. Any errors or re-proration in the calculation of charges apportioned pursuant to Section 2(b) shall be corrected as soon as practicable after such error or actual cost has been ascertained, provided that any claim after the Closing Date for an adjustment in any of the charges thereunder shall be made in writing within sixty (60) days after the Closing Date, or be forever barred. The provisions of this Section 2(d) shall survive the Closing.

3. **Required Deposit**. Upon execution hereof, Buyer shall deliver to the Seller by wire transfer the sum of Sixty Five Thousand and NO/100 Dollars ($65,000.00) (the "**Required Deposit**"). The Seller shall be required to maintain the Required Deposit in a non-interest bearing account.

4. **Remedies**.

(a) Breach.

(i) If Seller breaches any of its material obligations or repudiates this Agreement in any manner, including accepting a higher and better offer, then, subject to Section 4(a)(ii) and Seller's right, if any, to an Expense Reimbursement (defined below), Buyer shall be reimbursed the Required Deposit. The forgoing shall be Buyer's sole and exclusive remedy.

(ii) If Buyer breaches or repudiates this Agreement in any manner, including the failure to timely consummate the transaction contemplated by and pursuant to the terms and conditions of this Agreement for any reason other than the exercise by Buyer of its rights to terminate this Agreement pursuant to the provisions hereof ("**Buyer Default**"), then Seller may retain the Required Deposit together with any interest accrued thereon and may pursue any and all damages and remedies at law or in equity, including specific performance of this Agreement by Buyer. This Section 4(a)(ii) shall survive the termination of this Agreement.

(b) Termination of Agreement. Whenever one party has given the other notice of the termination of this Agreement in accordance with the terms hereof, the Required Deposit shall be disposed of in accordance with the terms hereof, and Seller's right to an Expense Reimbursement hereunder, if any, shall be paid, and upon such disposition, this Agreement shall be conclusively deemed and construed to have been terminated and of no further force and effect and the parties shall be deemed released of all obligations under this Agreement and neither party shall have any other rights or obligations under this Agreement except as provided under Section 4(a)(ii) with respect to a Buyer Default or under any other provision of this Agreement which expressly survives the termination of this Agreement. This Section 4(b) shall survive the termination of this Agreement.

5. **Due Diligence**.

(a) Title. Seller shall convey the Estate's interest, if any, in the Land and the Improvements by deed substantially in the form attached hereto as Exhibit B (collectively, the "**Deed**") to Buyer. Buyer is in the process of obtaining a commitment for title insurance (the "**Commitment**") issued by Old Republic National Title Insurance Company (the "**Title Company**"). Buyer agrees to be wholly satisfied with the information set forth in the Commitment and the condition of title to the Property. Buyer hereby acknowledges that: (i) Seller shall have no obligation to correct or cure any encumbrance or other matter of title set forth in the Commitment, of record or otherwise affecting condition of title of or to the Property, and (ii) except as set forth in Section 6(c) and Section 9, Buyer's obligations under this Agreement are not conditioned or contingent upon the condition of title of or to the Property. The Sale Order (as defined in Section 6(a) below) shall provide that the Property is conveyed to Buyer free and clear of all liens, claims, encumbrances, and other interests pursuant to Section 363(f) of the Bankruptcy Code, with any such liens, claims, encumbrances, or interests to attach to the sale proceeds with the same validity, priority, and extent as they existed prior to Closing, all in form and substance substantially consistent with the form of Sale Order attached hereto as Exhibit C.

(b) Due Diligence. Prior to the Effective Date, Buyer, its employees, agents and contractors received access to the Property for the purpose of making such physical and other inspections as Buyer determined necessary or desirable to assess the condition of the Property ("**Inspections**"). Buyer is wholly satisfied with the results of the Inspections and the condition of the Property. Buyer hereby acknowledges that: (i) Buyer shall not, and has no right under this Agreement to, access or inspect the Property or any portion or component thereof, and (ii) except as set forth in Section 9(b), Buyer's obligations under this Agreement are not conditioned or contingent upon the physical condition of the Property.

6. **Closing**.

(a) Closing Date. The consummation of the transactions described herein (the "**Closing**") shall occur on or before close of business the third (3rd) day following entry of an order of the Bankruptcy Court substantially in the form and substance of Exhibit C attached hereto and made a part hereof with respect to the Property (the "**Sale Order**"), or such other date as many be mutually agreed by the parties in writing, TIME BEING OF THE ESSENCE WITH RESPECT TO BUYER'S OBLIGATION TO CLOSE ON SUCH DATE (such date or any other date on which the Closing occurs, the "**Closing Date**") at Seller's option: (i) at the offices of Seller's counsel, or (ii) at such other time, place and /or manner as may be mutually agreed by the parties.

(b) Buyer Deliveries. At the Closing, Buyer shall fully execute and acknowledge, if necessary, and deliver to Seller the following:

(i) the balance of the Purchase Price, after giving effect to the prorations and adjustments specified in this Agreement, by confirmed wire transfer of immediately available funds;

(ii) all documents required by the title insurance company, and other documents which are customary and necessary to close this transaction in accordance with this Agreement, together with all resolutions, certificates of good standing, and such other organizational documents evidencing Buyer's authority to execute and deliver the Closing documents;

(iii) intentionally omitted;

(iv) a settlement statement detailing the amount due by Buyer giving effect to all prorations and adjustments specified in this Agreement;

(v) any real estate transfer tax declaration or similar documents required under applicable law in connection with the conveyance of the Property; and

(vi) acknowledgement of a Bill of Sale for the estate's interest in the Personal Property.

(c) Seller Deliveries. At the Closing, Seller shall fully execute and acknowledge, if necessary, and deliver to Buyer, the following:

(i) A Sale Order approving the sale of the Property free and clear of all liens, claims and interests to the fullest extent authorized by Section 363(b) and (f) of the Bankruptcy Code.

(ii) the Deed conveying the Property to Buyer;

(iii) a certificate with respect to Section 1445(a) of the Internal Revenue Code of 1986, as amended, relating to the Foreign Investors Real Property Tax Act;

(iv) such documents required by the title insurance company, which are customary and necessary to close this transaction in accordance with this Agreement; provided that, Seller shall have no obligation to execute any affidavits, indemnities or other agreements in connection with the issuance of Buyer's title insurance policies, other than (A) affidavits in form satisfactory to Seller as to authority, and (B) such affidavits and/or lien waivers from Seller and the Broker (as hereinafter defined), in form acceptable to the Seller and the title insurance company to issue Buyer's title insurance policies without exception for any lien arising as a result of Broker's representation of Seller in this transaction.

(v) originals, if available, or copies, of all warranties, guarantees, operating manuals, as-built drawings, the certificate of occupancy and other documents relating to the Property and any keys therefor, to the extent any of the same are then in Seller's possession;

(vi) a settlement statement detailing the amount due by Buyer giving effect to all prorations and adjustments specified in this Agreement; and

(vii) any real estate transfer tax declaration or similar documents required under applicable law in connection with the conveyance of the Property.

(d) Exceptions to Title. The consummation of the transactions contemplated hereby shall be subject to any exceptions to title and any matters that would be shown on a survey of the Property. In addition, the consummation of the transaction shall be further subject to any other matters which may affect the Property as of the Effective Date and to any exceptions to title and other matters which may affect the Property and which arise after the Effective Date other than as a result of an intentional act or omission of Seller after the Effective Date, which intentional act or omission is not required of Seller by Bankruptcy Court or Sale Order.

(e) Taxes, etc. At the Closing, Buyer shall pay any applicable personal property taxes, transfer taxes, recording taxes and fees and/or filing fees imposed in connection with the transactions described herein. Buyer shall indemnify, defend and hold harmless the Seller and its affiliate from any claims, loss, cost, damage or expense (including reasonable attorneys' fees and disbursements) suffered or incurred by Seller resulting from Buyer's failure to timely pay in full any such taxes and/or fees. The provisions of this Section 6(e) shall survive the Closing.

7. **Conditions of Closing**.

(a) Performance of Obligations. The obligations of each party to consummate the transactions described herein shall also be contingent upon the issuance of the Sale Order and complete and timely performance in all material respects by the other party of each of such other party's obligations hereunder and upon the truth in all material respects of each of such other party's representations and warranties contained herein, if any, on and as of the Closing Date.

(b) Failure of Conditions. If any of the conditions to a party's obligation to consummate the transactions described herein specified in this Section 7 is not satisfied at or before the Closing, and not waived by the non-defaulting party, and at least three (3) business days' notice and opportunity to cure has been given to the defaulting party, the non-defaulting party may (without affecting such non-defaulting party's remedies specified in Section 4) elect to cancel this Agreement by written notice.

(c) Higher and Better Offer. The obligations of Trustee under this Agreement are subject to the Trustee's duty before the Bankruptcy Court to obtain the highest and best offer for the Property. If Trustee, in Trustee's sole discretion, obtains a higher and better offer for the Property during the executory period of this Agreement, Trustee may, by written notice to Buyer, terminate this Agreement, and return the Required Deposit to Buyer and, if applicable, pay the Expense Reimbursement, following which neither Trustee nor Buyer shall have any further obligations or liabilities under this Agreement, except for the obligations and liabilities that expressly survive termination of this Agreement.

8. **Warranties, Representations and Covenants**.

(a) Fulfillment of Seller's Obligations. Upon the execution and delivery by Seller of the Deed and the other documents to be executed and delivered by Seller at the Closing and the fulfillment of the other conditions to Buyer's obligations to consummate the transactions provided for herein, Seller shall be deemed to have fully complied with and fulfilled all of the conditions, warranties, representations and covenants of this Agreement on the part of Seller.

(b) Buyer's Representations. Buyer warrants, represents and covenants to Seller as of the Effective Date and on and as of the Closing Date that (i) Buyer is a limited liability company duly organized, validly existing and in good standing under the laws of Delaware; (ii) Buyer has full power and authority to execute and deliver this Agreement and to perform its obligations hereunder and has taken all necessary action to authorize the execution and performance of this Agreement and the consummation of the transactions contemplated herein, subject to the approval of the Bankruptcy Court; (iii) Buyer has the financial resources to consummate the transaction contemplated herein and pay the Purchase Price, and (iv) Buyer has knowledge and expertise in financial and business matters that enable Buyer to evaluate the merits and risks of the transaction contemplated by this Agreement and that Buyer is not in any disparate bargaining position. Without limiting the foregoing, Buyer has funds available (either cash on hand or pursuant to committed financing agreements which do not contain any material qualification to the lender's obligation to advance funds to Buyer) to satisfy all of its obligations in this Agreement, including without limitation the payment of the Purchase Price. Buyer's representations and warranties set forth in this Agreement shall survive Closing.

(c) Buyer's Acknowledgments. **BUYER ACKNOWLEDGES THAT IT IS ACCEPTING THE PROPERTY AS OF THE CLOSING DATE "AS IS, WHERE IS AND WITH ALL FAULTS." BUYER ACKNOWLEDGES THAT SELLER HAS NOT MADE AND WILL NOT MAKE, NOR SHALL SELLER BE DEEMED TO HAVE MADE, ANY WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, AS TO (I) THE FITNESS, DESIGN OR CONDITION OF THE PROPERTY FOR ANY PARTICULAR USE OR PURPOSE, (II) THE QUALITY OF THE MATERIAL OR WORKMANSHIP THEREIN, (III) THE EXISTENCE OF ANY DEFECT, LATENT OR PATENT, (IV) COMPLIANCE WITH SPECIFICATIONS, (V) LOCATION, (VI) USE, (VII) CONDITION, (VIII) MERCHANTABILITY, (IX) QUALITY, (X) DESCRIPTION, (XI) DURABILITY, (XII) OPERATION, (XIII) VALUE, (XIV) SELLER'S TITLE THERETO, WHICH IS BEING CONVEYED AS IS WITH ALL DEFECTS AND OBJECTIONS, OR (XV) THE EXISTENCE OF ANY HAZARDOUS SUBSTANCE, AND ALL RISKS INCIDENT THERETO WHICH ARE TO BE BORNE BY BUYER. BUYER FURTHER ACKNOWLEDGES THAT SELLER HAS NOT MADE ANY REPRESENTATIONS OR WARRANTIES WITH RESPECT TO ENVIRONMENTAL CONDITIONS ON OR AFFECTING THE PROPERTY, INCLUDING (1) WHETHER THE PROPERTY HAS BEEN OR IS CONTAMINATED BY OR WITH, OR HAS OR IS CONTAMINATING OR HAS OR IS CONTRIBUTING TO THE CONTAMINATION OF ANY OTHER PROPERTY WITH, ANY SUBSTANCE IN ANY MANNER WHICH COULD REQUIRE REMEDIATION UNDER ANY LAW OR REGULATION, INCLUDING LOCAL, STATE, FEDERAL OR COMMON LAW, (2) WHETHER THE PROPERTY CONTAINS OR HAS EVER CONTAINED ANY ENVIRONMENTALLY SENSITIVE AREAS IN WHICH DEVELOPMENT COULD BE PRECLUDED OR LIMITED UNDER ANY LAW OR REGULATION, INCLUDING LOCAL, STATE, FEDERAL OR COMMON LAW, OR WETLANDS OR FLOOD PLAINS REGULATIONS OR LAWS, (3) WHETHER THE PROPERTY CONTAINS OR HAS EVER CONTAINED ANY UNDERGROUND TANKS OR SUBSTANCES OF ANY KIND, INCLUDING ASBESTOS OR POLYCHLORINATED BIPHENYLS, WHOSE REMOVAL OR DISPOSAL IS SUBJECT TO OR HAS EVER BEEN SUBJECT TO SPECIAL REGULATIONS UNDER ANY LAW OR REGULATION, INCLUDING LOCAL, STATE, FEDERAL OR COMMON LAW, OR (4) WHETHER ANY ACTIVITIES ON THE PROPERTY HAVE BEEN CONDUCTED OR ARE BEING CONDUCTED IN VIOLATION OF ANY LAWS CONCERNING THE HANDLING OF ANY MATERIALS BY REASON OF THE HAZARDOUS OR TOXIC CHARACTERISTICS OF SUCH MATERIALS OR THE DISPOSAL OF ANY WASTES, THE DISCHARGE OF ANY MATERIALS INTO THE SOIL, AIR, SURFACE, WATER, OR GROUNDWATER, OR THE CONDUCTING OF ACTIVITIES IN ENVIRONMENTALLY SENSITIVE AREAS. BUYER ACKNOWLEDGES THAT THE PROPERTY HAS BEEN INSPECTED BY BUYER AND IS SATISFACTORY TO IT. IN THE EVENT OF ANY DEFECT OR DEFICIENCY IN ANY PORTION OF THE PROPERTY OF ANY NATURE, WHETHER LATENT OR PATENT, THE SELLER SHALL NOT HAVE ANY RESPONSIBILITY OR LIABILITY WITH RESPECT THERETO OR FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES (INCLUDING STRICT LIABILITY IN TORT). THE PROVISIONS OF THIS SECTION 8(c) HAVE BEEN NEGOTIATED WITH THE ADVICE OF COUNSEL, AND ARE INTENDED TO BE A COMPLETE EXCLUSION AND NEGATION OF ANY WARRANTIES BY SELLER, EXPRESS OR IMPLIED, WITH RESPECT TO THE PROPERTY, ARISING PURSUANT TO THE UNIFORM COMMERCIAL CODE OR ANY OTHER LAW NOW OR HEREAFTER IN EFFECT OR ARISING OTHERWISE. THE PROVISIONS OF THIS SECTION 8(c) SHALL SURVIVE THE CLOSING OR THE TERMINATION OF THIS AGREEMENT.**

9. **Casualty and Condemnation**.

(a) Risk of Loss. The risk of loss or damage to the Property by fire or other casualty prior to Closing shall be on the Seller.

(b) Major Damage. In the event that the Property is damaged or destroyed by fire or other casualty prior to Closing and the cost of repair exceeds fifty percent (50%) of the Purchase Price, then Seller shall have no obligation to repair such damage or destruction and shall notify Buyer in writing of same (the "**Damage Notice**"). Within ten (10) days following Buyer's receipt of the Damage Notice, Buyer may elect at its option to terminate this Agreement by delivering written notice to Seller. In the event Buyer fails to terminate this Agreement within such ten-day period, this transaction shall be closed in accordance with the terms of this Agreement for the full Purchase Price, notwithstanding any such damage or destruction, and Buyer shall, at Closing, execute and deliver an assignment and assumption (in a form reasonably required by Seller) of Seller's rights and obligations with respect to the insurance claim and related to such casualty, and thereafter Buyer shall receive all remaining insurance proceeds pertaining to such claim (plus a credit against the Purchase Price at Closing in the amount of any deductible payable by Seller in connection therewith and not spent by Seller for demolition, site cleaning, restoration or other repairs).

(c) Minor Damage. In the event that the Property is damaged or destroyed by fire or other casualty prior to the Closing, and the cost of repair is equal to or less than fifty percent (50%) of the Purchase Price, this transaction shall be closed in accordance with the terms of this Agreement, notwithstanding the damage or destruction; provided, however, Seller shall make such repairs to the extent of any recovery actually received by the Seller from insurance carried on the Property if such repairs can be reasonably effected before the Closing. If Seller is unable to effect such repairs prior to Closing, then Buyer shall, at Closing, execute and deliver an assignment and assumption (in a form reasonably required by Seller) of Seller's rights and obligations with respect to the insurance claim and related to such casualty, and thereafter Buyer shall receive all remaining insurance proceeds pertaining to such claim (plus a credit against the Purchase Price at Closing in the amount of any deductible payable by Seller in connection therewith and not spent by Seller for demolition, site cleaning, restoration or other repairs).

(d) Repairs. To the extent that Seller elects to commence any repair, replacement or restoration of the Property prior to Closing, then Seller shall be entitled to receive and apply available insurance proceeds to any portion of such repair, replacement or restoration completed or installed prior to Closing, with Buyer being responsible for completion of such repair, replacement or restoration after Closing from the balance of any available insurance proceeds. To the extent that any repair, replacement or restoration of a casualty has been commenced prior to Closing, then Buyer shall assume at Closing, all construction and other contracts entered into by Seller in connection with such repair, replacement or restoration.

(e) Condemnation. If prior to Closing a taking of a material part of the Property pursuant to the power of eminent domain is proposed or occurs such that Buyer's use and enjoyment of the Property is materially and adversely effected thereby, Buyer shall have the right, at Buyer's option, to terminate this Agreement by giving written notice within ten (10) days after Buyer's receipt from Seller of notice of the occurrence of such event. If Buyer fails to terminate this Agreement within such ten (10) day period, this transaction shall be closed in accordance with the terms of this Agreement for the full Purchase Price and Buyer shall receive the full benefit of any condemnation award. As used in this Section 9(e), a taking shall be deemed to constitute a "material part of the Property" if such taking: (i) deprives the Land of access to public roads, (ii) requires reconstruction of any Buildings located on the Land, which reconstruction is reasonably estimated by Seller and Buyer to exceed $50,000, or (iii) proposes to take a

portion of the Land, the value of which, as determined by the applicable governmental authority, exceeds fifteen percent (15%) of the Purchase Price.

10. **Broker**. Buyer and Seller each represents to the other that it has not dealt with any party acting as a broker or sales agent in connection with the transactions described in this Agreement except for Newmark (the "**Broker**"). The Broker shall be compensated by Seller in accordance with any order entered by the Bankruptcy Court authorizing the Seller's retention of the Broker. Each party agrees to indemnify, defend and hold harmless the other party from and against any and all claims, expenses, fees or costs, including reasonable attorney's fees and disbursements, as a result of claims made by any person other than Broker for brokerage commissions, or other fees, with respect to the transactions described in this Agreement, as a result of the untruth of the representations of the indemnifying party under this Section 10. The provisions of this Section 10 shall survive the Closing or termination of this Agreement.

11. **Bankruptcy Court Matters.**

(a) Bankruptcy Actions. Seller shall use its reasonable best efforts to file a motion before the Bankruptcy Court seeking approval of the transactions contemplated under this Agreement within ten (10) business days of full execution hereof. Buyer covenants and agrees that it shall cooperate with Seller as necessary to submit such motion and/or obtain entry of the Sale Order, including without limitation by furnishing information or documents to Seller to satisfy the requirements for obtaining Bankruptcy Court approval of the Sale Order.

(b) Trustee's Obligation to Solicit Competing Offers. Buyer agrees and acknowledges that its purchase of the Property pursuant to this Agreement is subject to the Seller's obligation to market the Estate's assets, and to solicit, discuss and negotiate higher or better competing offers, if any, for the Property. Buyer agrees and acknowledges that Seller, including through his representatives, is and may continue soliciting inquiries, proposals or offers from third parties in connection with any alternative transaction for the Property.

(c) Approval. Seller's and Buyer's obligations under this Agreement and in connection with the transactions contemplated hereby are subject to entry of the Sale Order, and to the terms of the Sale Order and any other orders of the Bankruptcy Court applicable to the transactions contemplated in this Agreement. Nothing in this Agreement shall require the Seller or its affiliates or Buyer or its affiliates to give testimony to or submit a motion to the Bankruptcy Court that is untruthful or to violate any duty of candor or other fiduciary duty to the Bankruptcy Court or its stakeholders.

(d) Alternate Offers.

(i) Buyer acknowledges that this Agreement and the sale of the Property are subject to higher and better bids and Bankruptcy Court approval. Buyer acknowledges that Seller must take reasonable steps to demonstrate that it has sought to obtain the highest or otherwise best price for the Property, including giving notice of the opportunity to purchase the Property to other potential purchasers and certain parties in interest in the Bankruptcy Cases, providing information about the Debtor's assets to prospective bidders, entertaining higher and better offers from such prospective bidders for the Property, and, in the Trustee's sole discretion, in the event that additional qualified prospective purchasers desire to submit an offer for the Property, conducting an auction regarding the Property.

(ii) Notwithstanding any other provision of this Agreement to the contrary, Buyer acknowledges that Seller and its affiliates and advisors are and may continue soliciting and/or responding to inquiries, proposals or offers for the Property and may furnish any information with respect to, or assist or participate in, or facilitate in any other manner, any effort or attempt by any person to do or seek to do any of the foregoing in connection with any alternative transaction.

(e) Expense Reimbursement.

(i) Buyer and Seller acknowledge that Seller may receive competing bids for the Property, and further, that the Seller may elect in his sole and exclusive discretion to conduct an auction for the Property. Nothing in this Agreement, or any document related to the Sale, will require the Seller or his representatives to close the Sale with Buyer or otherwise take any action, or to refrain from taking any action, to the extent inconsistent with their fiduciary obligations or applicable law. In the event that Seller closes a sale of the Property to a third-party that is not affiliated with Buyer (an "**Alternative Transaction**"), in consideration for Buyer having expended considerable time and expense in connection with this Agreement, the negotiation thereof, and related due diligence, the Estates shall, subject to Bankruptcy Court approval, pay to Purchaser up to twenty-five thousand dollars ($25,000.00) in actual documented fees and expenses incurred in connection with this Agreement (the "**Expense Reimbursement**"); provided that the Expense Reimbursement shall only be payable concurrently with the consummation of, and only out of the cash proceeds of, the Alternative Transaction.

12. **Notices**. All notices and other communications hereunder shall be in writing and shall be deemed given when mailed, delivered personally, or sent by an overnight courier service, such as Federal Express, to the parties at the following addresses:

If to Seller:

Alfred T. Giuliano, Trustee
2301 E. Evesham Road
Pavilion 800, Suite 210
Vorhees, NJ 08043
Telephone: (856) 767-3000 Ext. 111
Email: atgiuliano@giulianomiller.com

with a copy to:

John T. Carroll, III
Cozen O'Connor
1201 North Market Street, Suite 1001
Wilmington, DE 19801
Telephone: (302) 295-2028
Facsimile: (302) 295-2013
Email: jcarroll@cozen.com

If to Buyer:

VASCOR Ltd.
Attn: Greg Denton
100 Farmers Bank Drive, Suite 300
Georgetown, KY 40324
Telephone: (678) 427-6360
Facsimile: (502) 542-6566
Email: Gdenton@vascorltd.com

with a copy to:

Taft A. McKinstry
Fowler Bell PLLC
300 West Vine Street, Suite 600
Lexington, KY 40507
Telephone: (859) 252-6700
Facsimile: (859) 255-3735
Email: tmckinstry@fowlerlaw.com

or to such other address as a party may from time to time designate in writing in accordance with this Section 12. Each notice or other communication given to any party hereto in accordance with the provisions

of this Agreement shall be deemed to have been received (a) on the business day it is sent, if sent by personal delivery or telecopy, or (b) on the first business day after sending, if sent by overnight delivery, properly addressed and prepaid or (c) upon receipt, if sent by mail (regular, certified or registered); provided, however, that notice of change of address shall be effective only upon receipt.

13. **Miscellaneous**.

(a) Entire Agreement; Amendments. This Agreement, together with any and all exhibits hereto, constitutes the complete and final expression of the agreement of the parties hereto and supersedes all previous agreements, either oral or written, with respect to the Property and the transactions described herein. This Agreement may not be modified, amended, discharged or terminated nor may any of the obligations of the parties hereunder be waived, except by a written instrument executed by the parties hereto.

(b) No Assignment of Agreement. The terms, conditions and covenants of this Agreement shall be binding upon and shall inure to the benefit of the parties and their respective nominees, successors, beneficiaries and permitted assignees. Buyer may not encumber this Agreement or any interest herein, by operation of law or otherwise, without the prior written consent of Seller. Buyer may transfer and assign this Agreement to an affiliate of Buyer for purposes of accepting title to property purchased pursuant to this Agreement. However, any such transfer or assignment shall not relieve Buyer of its obligations under this Agreement which shall remain in full force and effect.

(c) No Recording. Buyer shall not (i) record, or attempt to record, this Agreement or a memorandum hereof or (ii) place, or attempt to place, a vendee's lien upon the Property. Any breach of these covenants shall constitute a Buyer Default under Section 4(a) and Seller shall be entitled to exercise all of the rights and remedies available to Seller as a result thereof. To the extent that such filing or recordation is made in violation of this Agreement, Buyer shall indemnify Seller against any damages (including consequential damages) incurred by Seller as a result thereof. The provisions of this Section 13(c) shall survive the termination of this Agreement.

(d) Parties' Expenses. Seller and Buyer shall pay their own respective expenses, costs and fees (including attorneys' fees and disbursements) incurred in connection with the negotiation, preparation, execution and delivery of this Agreement and the consummation of the transactions contemplated by this Agreement. Buyer shall pay all costs and expenses relating to the transaction contemplated by this Agreement, including, but not limited to, all transfer taxes, recording fees, title insurance costs, all costs incurred in connection with the physical inspection of the property, environmental reports and other such investigations.

(e) Construction; Headings. When used herein, the term "including" shall mean "including without limitation" unless otherwise specifically provided; all other language in this Agreement shall be construed simply according to its fair meaning, and not strictly for or against any of the parties hereto. The headings in this Agreement are for convenience only, and are not to be utilized in construing the content or meanings of any of the provisions hereof and shall not be deemed to constitute a part of this Agreement. All pronouns and any variations thereof shall be deemed to refer to the masculine, feminine, neuter, singular or plural, as the identity of the person or persons may require. Both parties to this Agreement having participated fully and equally in the negotiation and preparation hereof, this Agreement shall not be more strictly construed, or any ambiguities within this Agreement resolved, against either party hereto.

(f) Announcements. Neither party shall make any press release or other public announcement or disclosure concerning this transaction without the prior written consent of the other party, which shall not be unreasonably withheld or delayed. The forgoing shall not prohibit such announcements

or disclosures as may be required by law. Appearances in, or filings with, the Bankruptcy Court, any dealings with the various creditor committees and notices to parties to any bankruptcy case involving the Seller, the Estate or the Debtor shall not be deemed a public announcement for purposes of this Section 13(f).

(g) Severability. Any provision of this Agreement which is prohibited or deemed unenforceable shall be ineffective to the extent of such prohibition or enforceability without invalidating the remaining portions hereof or affecting the validity or enforceability of any other provision of this Agreement. Formal tender of an executed deed and purchase money is hereby waived.

(h) Governing Law. This Agreement shall be governed and construed according to the laws of the State of Delaware and the applicable provisions of the Bankruptcy Code; provided that any provisions relating to the conveyance of interests in real property (including the validity, construction and enforcement of the Deed) shall be governed by the laws of the State in which the applicable Land is located.

(i) Jurisdiction. The Bankruptcy Court shall retain exclusive jurisdiction over any matter arising from or relating to the sale of the Property and the enforcement of any rights and remedies of Seller or Buyer hereunder. Buyer hereby consents to such jurisdiction.

(j) Not a Joint Venture. Seller and Buyer each acknowledge and agree that the relationship between them is that of seller and buyer and this Agreement does not constitute a partnership, joint venture or any other association between them.

(k) Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which counterparts taken together shall constitute one and the same original. Executed copies of this Agreement may be delivered electronically or by telecopy and, upon receipt, shall be deemed originals and binding upon the parties hereto. Without limiting or otherwise affecting the validity of executed copies hereof that have been delivered electronically or by telecopy, the parties will use commercially reasonable efforts to deliver originals as promptly as possible following execution thereof.

(l) Time of the Essence. All times specified in this Agreement shall be of the essence of this Agreement. If any date herein set forth for the performance of any obligations by Seller or Buyer or for the delivery of any instrument or notice as herein provided should be on a Saturday, Sunday or legal holiday, the compliance with such obligations or delivery shall be deemed acceptable on the next business day following such Saturday, Sunday or legal holiday. As used herein, the term “legal holiday” means any state or federal holiday on which financial institutions or post offices are generally closed in the State of Delaware.

(m) Bulk Transfer Laws. Buyer acknowledges that Seller will not comply with the provisions of any bulk transfer laws or similar laws of any jurisdiction in connection with the transactions contemplated by this Agreement, including the United Nations Convention on the Sale of Goods, and hereby waives all claims related to the non-compliance therewith. Seller and Buyer have agreed to rely upon the adjustment provisions of this Agreement to address any matters that would otherwise be subject to such bulk sale requirements.

[Remainder of page intentionally left blank]

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Agreement or caused this Agreement to be executed by their respective officers thereunto duly authorized as of the date first written above.

**SELLER:**

**ALFRED T. GIULIANO,**
AS TRUSTEE FOR THE ESTATE

By: ______________________________
Name: Alfred T. Giuliano
Title: Trustee

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Agreement or caused this Agreement to be executed by their respective officers thereunto duly authorized as of the date first written above.

**BUYER:**

VASCOR Ltd.,
a Delaware company

By: ______________________________

Name: Greg Denton

Title: Chief Financial Officer

**EXHIBIT A**

LEGAL DESCRIPTION OF THE LAND

Property Address: 239 Triport Road, Georgetown, Scott County, KY 40324

241 Triport Road, Georgetown, Scott County, KY 40324

Property 1 - 161-40-012.001

Being all of Lot No. 196 (formerly Lot Nos. 196 and 197) Triport Industrial Park Subdivision near the City of Georgetown, Scott County, Kentucky, as shown on revised plat thereof of record on Slide 372, in the Office of the Clerk of Scott County, to which plat reference is hereby made, containing 5.417 acres, more or less.

Property 2 - 161-40-012.000

Beginning at a point in the east right-of-way line of Triport Road, said point being 30 feet from the centerline of Triport, and 500 feet North of the PI (Point of Tangent intersection) of the roadway curve, South of the property, said PI being approximately 1,280 feet (plus or minus) from Delaplain Road; thence with the East right-of way line of Triport Road N 14°49' E, 390 feet, thence with a new line S 75°11' East, 446.77 feet and S 14°49' West, 390 feet and N 75°11' West, 446.77 feet to the Point of Beginning, containing 4.00 acres, more or less, as shown by plat of Triport Industrial Park, recorded February 10, 1977, of record in Plat Cabinet Slide 218 (formerly Plat Book 5, Page T), in the Office of the Clerk of Scott County; and

Being the same property conveyed to Jack Cooper Transport Company, LLC, a Delaware limited liability company by Special Warranty Deed from Jack Cooper Transport Company, Inc., a Delaware corporation of record in Deed Book 410, page 515, Clerk' s Office for Scott County, Kentucky, dated November 04, 2019 and recorded on November 25, 2019.

**EXHIBIT B**

Form of Deed

**DEED**

***INDENTURE**, Made the ___ day of ____________, 2026,*

BETWEEN **Alfred T. Giuliano**, in his capacity as Chapter 7 trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Jack Cooper Transport Company, LLC (the "Debtor"),

*party of the first part, and*

**VASCOR. Ltd.** , a Delaware company, with an address of 100 Farmers Bank Square, #300 Georgetown, KY 40324 (the "Buyer"),

*party of the second part,*

The property tax bill for the current year may be addressed in-care-of VASCOR, Ltd., a Delaware company, at 100 Farmers Bank Drive, Suite 300, Georgetown, KY 40324.

**WHEREAS,** on March 8, 2025, the Debtor filed a petition under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the U.S. Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), thereby commencing Case No. 24-10416 (Jointly Administered) (the "Bankruptcy Case"); and

**WHEREAS,** the Trustee was subsequently appointed Trustee of the Debtor's Estate; and

**WHEREAS,** on __________ ____, 2026, the Trustee filed a *Motion for Entry of an Order (I) Approving Sale of Real Property located in Georgetown, Kentucky Free and Clear of All Liens, Claims and Encumbrances; (II) Approving the Trustee's Entry into the Purchase and Sale Agreement; and (III) Granting Related Relief* (the "Sale Motion") in the Bankruptcy Case, pursuant to which the Trustee sought authority to sell all the of the Estate's right, title and interest of in the Real Property (as hereinafter defined) free and clear of all liens, claims and encumbrances pursuant to the highest and best bid received by the Trustee; and

**WHEREAS,** the Trustee subsequently declared VASCOR, Ltd. as having made the highest and best offer for the Real Property; and

**WHEREAS,** on _________________, 2026, the Bankruptcy Court entered its *Order (A) Approving the Sale of Certain of the Estates' Assets Free and Clear of All Liens, Claims and Encumbrances, (B) Authorizing the Trustee to Enter into and Perform His Obligations under the Purchase Agreement, and (C) Granting Related Relief* (the "Sale Order"), thereby authorizing, among other relief, the Trustee to sell the Estate's interest in the Real Property to VASCOR, Ltd., a copy of which Sale Order is attached hereto as Schedule A and made a part hereof; and

**WITNESSETH,** that the Trustee, pursuant to the Sale Order and section 363(b) of the Bankruptcy Code, 11 U.S.C. § 363(b), and in consideration of ONE MILLION THREE HUNDRED THOUSAND DOLLARS paid by the Buyer, has this date bargained and sold and hereby grants and conveys unto the Party of the Second Part, its successors and assigns forever, free and clear of all liens, claims and encumbrances to the fullest extent authorized by the Sale Order, all of the bankruptcy Estate's right, title and interest in and to, with all improvements thereon and privileges thereto appurtenant,

ALL THAT TRACT OR PARCEL OF LAND located in Scott County, Commonwealth of Kentucky and being more particularly bounded and described in Schedule B annexed hereto and made a part hereof (the "Real Property").

Being the same premises conveyed to the Jack Cooper Transport Company, LLC, a Delaware limited liability company, by Special Warranty Deed from Jack Cooper Transport Company, a Delaware corporation, of record in Deed Book 410, page 515, Clerk's Office for Scott County, Kentucky, dated November 04, 2019 and recorded on November 25, 2019

This conveyance is made subject to enforceable covenants, conditions, restrictions and easements of record.

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof;

TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises;

TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the successors and assigns of the party of the second part forever.

The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

The parties hereto state the consideration reflected in this Deed is the FULL CONSIDERATION paid for the property. The Party of the Second Part joins in this Deed for the sole purpose of certifying the consideration pursuant to KRS 382.135.

*[signature pages follow]*

**IN WITNESS WHEREOF,** the party of the first part and the party of the second part have duly executed this deed the day and year first above written.

PARTY OF THE FIRST PART:

___________________________________
Alfred T. Giuliano, as Trustee for the Bankruptcy Estate of Jack Cooper Transport Company, LLC

STATE OF )
)ss.:
COUNTY OF )

On the ____ day of ___________ in the year 2026 before me, the undersigned, a notary public in and for said State, personally appeared, Alfred T. Giuliano**,** personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

____________________________________
NOTARY PUBLIC

____________________________________
NOTARY NAME PRINTED

NOTARY ID: _______________

My Commission Expires:_______________

(SEAL):

PARTY OF THE SECOND PART:

VASCOR, Ltd.

BY: ___________________________________
NAME: Greg Denton_____________________
Its: Chief Financial Officer ________________

COMMONWEALTH OF KENTUCKY)
)ss.:
COUNTY OF SCOTT )

The foregoing instrument was subscribed, sworn to and acknowledged before me this the ____ day of _________, 2026, by Greg Denton, Chief Financial Officer of and on behalf of VASCOR, Ltd., a Delaware company.

_______________________________________
NOTARY PUBLIC

_______________________________________
NOTARY NAME PRINTED

NOTARY ID: _____________

My Commission Expires:________________

(SEAL)

THIS INSTRUMENT WAS
PREPARED BY:

FOWLER BELL PLLC
300 West Vine Street, Suite 600
Lexington, Kentucky 40507
(859) 252-6700

By: ___________________________________
Taft A. McKinstry, Esq.

**EXHIBIT C**

SALE ORDER

**THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br>Jack Cooper Transport Company, LLC *et al*.[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 25-10416 (BLS)<br>(Jointly Administered)<br><br>**Related Doc. No. _____** |

**ORDER (A) APPROVING THE SALE OF CERTAIN OF THE ESTATES' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, (B) AUTHORIZING THE TRUSTEE TO ENTER INTO AND PERFORM HIS OBLIGATIONS UNDER THE PURCHASE AGREEMENT, AND (C) GRANTING CERTAIN RELATED RELIEF**

This matter coming before the Court on the *Trustee's Motion for Entry of an Order (I) Approving Sale of Triport, Kentucky Property Free and Clear of All Liens, Claims and Interests; (II) Approving the Trustee's Entry into the Purchase and Sale Agreement; and (III) Granting Related Relief* (the "Sale Motion")[2] [D.I. __], seeking, among other things: (a) approval of the Purchase and Sale Agreement dated _____ (together with all exhibits, schedules, and other documents ancillary thereto, the "Purchase Agreement"); (b) authority to sell the Property (as defined in the Purchase Agreement) to VASCOR, Ltd. (the "Buyer") free and clear of liens, claims, and other interests, and (c) related relief; and adequate and sufficient notice of the Purchase Agreement and all transactions contemplated thereunder and in this Order having been provided

[1] The Debtors in these chapter 7 cases and their case numbers are: JC TopCo., Inc.; 25-10402 (BLS); Auto & Boat Relocation Services Company, LLC; 25-10403 (BLS); Auto Handling, LLC; 25-10404 (BLS); Jack Cooper CT Services, LLC; 25-10405 (BLS); Jack Cooper Diversified II, LLC; 25-10406 (BLS); Jack Cooper Equipment Leasing, LLC; 25-10407 (BLS); Jack Cooper Holdings, LLC; 25-10408 (BLS); Jack Cooper Investments, Inc.; 25-10409 (BLS); Jack Cooper Logistics II, LLC; 25-10410 (BLS); Jack Cooper Rail & Intermodal, LLC; 25-10411 (BLS); Jack Cooper Rail and Shuttle, LLC; 25-10412 (BLS); JC Intermediate Holdings, Inc.; 25-10413 (BLS); JC Parent Corporation; 25-10414 (BLS); North American Auto Transportation, LLC; 25-10415 (BLS); Jack Cooper Transport Company, LLC; 25-10416 (BLS).

[2] Unless otherwise defined in this Order, all capitalized terms shall have the meanings provided in the Sale Motion and/or the Purchase Agreement.

by the Trustee; and all interested parties having been afforded an opportunity to be heard with respect to the Sale Motion and all relief related thereto; and the Court having reviewed and considered the Sale Motion and all relief related thereto, and having held a hearing regarding the Sale Motion on ___________, 2026 (the "Sale Hearing"); and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation; and good and sufficient cause appearing,

**THE COURT HEREBY FINDS AND DETERMINES THAT:**[3]

**Jurisdiction, Final Order, and Statutory Predicates**

A. This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. § 1334(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B. The statutory predicates for the relief requested in the Sale Motion are sections 105(a) and 363 of the Bankruptcy Code, and Bankruptcy Rules 2002(a)(2), 6004, 9007, and 9014.

C. This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rule 6004(h), and to any extent necessary under Bankruptcy Rule 9014 and Federal Rule of Civil Procedure 54(b), as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order.

[3] These findings and conclusions constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Sale Motion are hereby incorporated herein to the extent not inconsistent herewith. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

## Notice of the Sale

D. Written notice of the Sale Motion was provided to the Notice Parties, and such notice was reasonably calculated to provide all interested parties with timely and proper notice of the Sale and Sale Hearing.

E. As evidenced by the certificates of service previously filed with the Court, proper, timely, adequate, and sufficient notice of the Sale Motion, Sale, Sale Hearing and the transactions contemplated thereby have been provided in accordance with the Bidding Procedures Order, sections 105(a) and 363 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, and 9007. The notices described above were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Sale Motion, Sale, or Sale Hearing is or shall be required.

F. The disclosures made by the Trustee concerning the Sale Motion, Purchase Agreement, Sale, and Sale Hearing were good, complete, and adequate.

G. A reasonable opportunity to object and be heard with respect to the Sale and the Sale Motion, and the relief requested therein, has been afforded to all interested persons and entities, including but not necessarily limited to the Notice Parties.

## Good Faith of Buyer

H. The Purchase Agreement was negotiated, proposed, and entered into by the Trustee and the Buyer without collusion, in good faith, and from arm's-length bargaining positions.

I. Neither the Trustee nor the Buyer has engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under section 363(n) of the Bankruptcy Code. Specifically, the Buyer has not acted in a collusive manner with any person and the Purchase Price was not controlled by any agreements among the bidders.

J. The Buyer is purchasing the Property in good faith, and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to all of the protections afforded by that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*: (a) the Buyer recognized that the Trustee was free to deal with any other party interested in acquiring the Property, including after the parties entered into the Purchase Agreement; and (b) all payments to be made by the Buyer in connection with the Sale have been disclosed.

**Highest and Best Offer**

K. The Trustee, with the assistance of the Broker, has conducted an extensive marketing process with respect to the Property, affording a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Property. The marketing process was conducted in a non-collusive, fair, and good faith manner, and a reasonable opportunity was given to any interested party to make a higher and better offer for the Property.

L. The Purchase Agreement constituted the highest and best offer for the Property, and will provide a greater recovery for the Estates than would be provided by any other available alternative. The Trustee's determination that the Purchase Agreement constitutes the highest and best offer for the Property constitutes a valid and sound exercise of the Trustee's business judgment.

**No Fraudulent Transfer**

M. The consideration provided by the Buyer pursuant to the Purchase Agreement (i) is fair and reasonable, (ii) constitutes the highest and/or best offer for the Property, and (iii) constitutes reasonably equivalent value and fair consideration for the Property. No other person or entity or group of entities has offered to purchase the Property for greater economic

value to the Estates than the Buyer. Approval of the Sale Motion and the Purchase Agreement, and the consummation of the transactions contemplated thereby, are in the best interests of the Estates.

N. The Buyer is not a mere continuation of the Debtors or the Estates, and no continuity of enterprise exists between the Buyer and the Debtors or the Estates. The Buyer is not holding itself out to the public as a continuation of the Debtors or the Estates. The Buyer is not a successor to the Debtors or the Estates, and the Sale does not amount to a consolidation, merger, or de facto merger of the Buyer and the Debtors or the Estates.

**Validity of Transfer**

O. The Purchase Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors. Neither the Trustee nor the Buyer is entering into the transactions contemplated by the Purchase Agreement fraudulently for purposes of statutory and/or common law fraudulent conveyance and fraudulent transfer laws.

P. The Estates are the sole and lawful owners of the Property. Subject to section 363(f) of the Bankruptcy Code, the transfers of the Property to the Buyer will be, as of the Closing Date, legal, valid, and effective transfers of the Property, which transfers will vest the Buyer with all right, title, and interest of the Estates to the Property free and clear of: (a) all liens and encumbrances against the Property existing on the Closing Date (the "Liens"), and (b) all claims (as that term is defined in section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guaranties, options, rights, contractual commitments, restrictions, interests, and matters of any kind and nature, whether arising prior to or subsequent to the Petition Date, and whether imposed by agreement, understanding, law, equity, or otherwise (including, without limitation, rights with respect to claims and Liens (i) that purport to give to any party a right of setoff or recoupment

against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, any of the Estates' or the Buyer's interests in the Property, or any similar rights, or (ii) in respect of taxes, restrictions, rights of first refusal, charges, or interests of any kind or nature, if any, including, without limitation, any restriction of use, voting, transfer, receipt of income, or other exercise of any attributes of ownership), whether known or unknown, disclosed or undisclosed, matured or unmatured, fixed or contingent, asserted or unasserted, liquidated or unliquidated (collectively, as defined in this clause (b), "Claims"), relating to, accruing, or arising any time prior to the Closing Date.

**Section 363(f) is Satisfied**

Q. The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Trustee may sell the Property free and clear of any interest in the Property.

R. The Buyer would not have entered into the Purchase Agreement, and would not consummate the transactions contemplated thereby, if the sale of the Property to the Buyer were not free and clear of all Liens and Claims. The Buyer shall not be responsible for any Liens or Claims in respect of the Property.

S. The Trustee may sell the Property free and clear of all Liens and Claims against the Estates and/or any of the Property because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code have been satisfied. Those holders of Liens or Claims against the Estates or any of the Property who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. All other holders of Liens or Claims are adequately protected by having their Liens or Claims, if any, in each instance against the Estates or any of the Property, attach to the net cash proceeds of the Sale ultimately attributable to the particular Property in which

such creditor alleges a Lien or Claim, in the same order of priority, with the same validity, force and effect that such Lien or Claim had prior to the Sale, subject to any claims and defenses that the Estates may possess with respect thereto.

**Compelling Circumstances for an Immediate Sale**

T. Good and sufficient reasons for approval of the Purchase Agreement and the Sale have been articulated. The relief requested in the Sale Motion is in the best interests of the Estates. The Trustee has demonstrated both (i) good, sufficient, and sound business purposes and justifications, and (ii) compelling circumstances for the Sale other than in the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code in that, among other things, the immediate consummation of the Sale to the Buyer is necessary and appropriate to maximize the value of the Estates. Time is of the essence in consummating the Sale.

U. Given all of the circumstances of the Bankruptcy Cases and the adequacy and fair value of the Purchase Price under the Purchase Agreement, the proposed Sale of the Property to the Buyer constitutes a reasonable and sound exercise of the Trustee's business judgment and should be approved.

V. The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), and 363(m) , and all of the applicable requirements of such sections have been complied with in respect of the transaction.

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

## General Provisions

1. The relief requested in the Sale Motion as it relates to the Purchase Agreement and the Sale of the Property to Buyer is granted and approved as set forth herein, and the Sale to Buyer contemplated in the Sale Motion and the Purchase Agreement is approved.

2. All objections to the Sale Motion or the relief requested therein, as it relates to the Purchase Agreement and the Sale of the Property to Buyer, that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are hereby denied and overruled with prejudice.

## Approval of the Purchase Agreement

3. The Purchase Agreement (and all schedules and exhibits affixed thereto) and all other ancillary documents, all of the terms and conditions thereof, and the transactions contemplated therein are hereby approved and authorized.

4. Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Trustee is authorized and empowered to take any and all actions necessary or appropriate to: (i) consummate the Sale of the Property to the Buyer pursuant to and in accordance with the terms and conditions of the Purchase Agreement and this Order; (ii) close the Sale as contemplated in the Purchase Agreement and this Order; and (iii) execute and deliver, perform under, consummate, implement, and close fully the Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and the Sale.

5. This Order shall be binding in all respects upon the Trustee, the Estates, the Debtors, all creditors of, and holders of equity interests in, the Debtors, any holders of Liens, Claims, or other interests in, against, or on all or any portion of the Property (whether known or

unknown), the Buyer and all successors and assigns of the Buyer, and the Property. This Order and the Purchase Agreement shall inure to the benefit of the Estates and their creditors, the Buyer, and the respective successors and assigns of each of the foregoing.

6. [Insert if Trustee pursuing Alternative Transaction: The Trustee is authorized to pay up to $25,000 to VASCOR, Ltd. ("Vascor") in actual documented fees and expenses incurred in connection with that certain Purchase and Sale Agreement, dated June __, 2026, between the Trustee and Vascor (the "Expense Reimbursement"); provided that the Expense Reimbursement shall only be payable concurrently with the consummation of, and only out of the cash proceeds of, the [closing of the sale to the new buyer].]

**Transfer of the Property**

7. Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Trustee is authorized to transfer the Property to the Buyer on the Closing Date and, upon the Closing under the Purchase Agreement, such transfers shall constitute legal, valid, binding, and effective transfers of such Property and shall vest the Buyer with title to the Property and, upon the Trustee's delivery of the deed to the Property to Buyer, shall be free and clear of all Liens, Claims, and other interests of any kind or nature whatsoever, including but not limited to, successor or successor-in-interest liability and Claims, including without limitation, (i) that certain Mortgage by Jack Cooper Transport Company, LLC, for the benefit of Central States, Southeast and Southwest Areas Pension Fund, to dated February 29, 2024, and recorded March 13, 2024, (ii) that certain Mortgage by Jack Cooper Transport Company, LLC, for the benefit of Central States, Southeast and Southwest Areas Health and Welfare Fund, dated February 29, 2024, and recorded March 18, 2024; and (iii) that certain Mortgage by Jack Cooper Transport Company, LLC, for the benefit of Central States, Southeast and Southwest Areas Health and Welfare Fund, dated November 06,

2024, and recorded December 12, 2024, with all such Liens, Claims or other interests to attach to the net cash proceeds ultimately attributable to the property against or in which such Liens, Claims, or interests are asserted, subject to the terms thereof, with the same validity, force and effect, and in the same order of priority, that such Liens, Claims, or interests now have against the Property. Upon the Closing, the Buyer shall take title to and possession of the Property.

8. All persons and entities in possession of some or all of the Property on the Closing Date are directed to surrender possession of such Property to the Buyer or its assignee at the Closing. On the Closing Date, each of the Estates' creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Liens, Claims, or other interests in the Property, if any, as such Liens, Claims, or interests may have been recorded or may otherwise exist.

9. On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Estates' interests in the Property. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement and this Order.

10. A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any Liens and other encumbrances of record.

11. If any person or entity that has filed statements or other documents or agreements evidencing Liens on, or interests in, all or any portion of the Property shall not have delivered to the Trustee prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of Liens and easements, and any other

documents necessary for the purpose of documenting the release of all Liens, Claims, or other interests that the person or entity has or may assert with respect to all or any portion of the Property, the Trustee is hereby authorized and directed, and the Buyer is hereby authorized, to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Property.

12. This Order is and shall be effective as a determination that, on the Closing Date, all Liens, Claims, or other interests of any kind or nature whatsoever existing as to the Property prior to the Closing Date, shall have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effected. This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

**Prohibition of Actions against the Buyer**

13. Except as otherwise provided in this Order or the Purchase Agreement, the Buyer shall not have any liability or other obligation to the Estates arising under or related to any of the Property. Without limiting the generality of the foregoing, and except as otherwise provided herein or in the Purchase Agreement, the Buyer shall not be liable for any Claims against the

Estates, and the Buyer shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger, mere continuation, or substantial continuity, whether known or unknown, as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated.

14. All persons and entities holding Liens, Claims, or other interests of any kind or nature whatsoever against or in all or any portion of the Property (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), hereby are forever barred, estopped, and permanently enjoined from asserting against the Buyer, its affiliates, its successors or assigns, its property, or the Property, such persons' or entities' Liens, Claims, or interests in and to the Property, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Buyer, its affiliates, its successors, assets or properties; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Buyer, its affiliates, its successors, assets or properties; (iii) creating, perfecting, or enforcing any Lien or other Claim against the Buyer, its affiliates, its successors, assets, or properties; (iv) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Buyer, its affiliates, or its successors; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating or failing or refusing to transfer or renew any license, permit, or authorization to operate any of the Property or conduct any of the businesses operated with the Property. On the Closing Date, each creditor is authorized and directed to execute such documents

and take all other actions as may be necessary to release Liens, Claims, and other interests in or on the Property, if any, as provided for herein, as such Liens, Claims, or interests may have been recorded or may otherwise exist.

15. All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Trustee to sell and transfer the Property to the Buyer in accordance with the terms of the Purchase Agreement and this Order.

16. The Buyer has given substantial consideration under the Purchase Agreement for the benefit of the Estates. The consideration given by the Buyer shall constitute valid and valuable consideration for the releases of any potential Claims and Liens pursuant to this Order, which releases shall be deemed to have been given in favor of the Buyer by all holders of Liens against or interests in, or Claims against, the Estates or any of the Property. The consideration provided by the Buyer for the Property under the Purchase Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

17. Nothing in this Order or the Purchase Agreement releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order. Nothing in this Order or the Purchase Agreement authorizes the transfer or assignment to the Buyer of any license, permit, registration, authorization, or approval of or with respect to a governmental unit without the Buyer's complying with all applicable legal requirements under non-bankruptcy law governing such transfers or assignments.

**Other Provisions**

18. The transactions contemplated by the Purchase Agreement are undertaken by the Buyer without collusion and in good faith, and accordingly, the reversal or modification on appeal

of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, unless such authorization and the Sale are duly stayed pending such appeal. The Buyer is a good faith buyer and, as such, shall have the full protections of section 363(m) of the Bankruptcy Code.

19. Buyer is not an "insider" of any of the Debtors as that term is defined in section 101(31) of the Bankruptcy Code.

20. Pursuant to Federal Rules of Bankruptcy Procedure 7062, 9014, and 6004(h), this Order shall be effective immediately upon entry and the Trustee and the Buyer are authorized to close the Sale immediately upon entry of this Order.

21. No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

22. The failure specifically to reference any particular provision of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement is authorized and approved in its entirety; provided, however, that this Order shall govern if any inconsistency exists between the Purchase Agreement (including all ancillary documents executed in connection therewith) and this Order. Likewise, all of the provisions of this Order are nonseverable and mutually dependent.

23. The Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Estates or on any non-consenting third party.

24. The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Purchase Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Trustee is party or which has been assigned by the Trustee to the Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.

25. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

26. To the extent that this Order is inconsistent with any prior order or pleading with respect to the Sale Motion, the terms of this Order shall govern.